UNITED STATES of America,
Plaintiff–Appellee,

v.

Edward J. KRENZELOK and John Law Freeman, Defendants–Appellants.

Nos. 88–2827, 88–2967.

United States Court of Appeals,
Seventh Circuit.

Argued March 31, 1989.

Decided May 17, 1989.

Thomas E. Martin, Thomas L. Miller, and Brennan & Collins, Milwaukee, Wis., for defendants-appellants.

Eric J. Klumb, Asst. U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before CUMMINGS, POSNER and FLAUM, Circuit Judges.

POSNER, Circuit Judge.

A jury convicted Edward J. Krenzelok and John Law Freeman (the *nom de guerre* of Alton R. Moss) of federal mail fraud. The judge sentenced Krenzelok to nine months in prison (plus $3,000 in fines) and Freeman to four years. Freeman, the mastermind of the scheme, is a leader of the tax protester movement. See *United States v. Moss*, 559 F.Supp. 37 (D.Ore. 1983). He persuaded Krenzelok, who owns a modest septic-tank-cleaning business, to place the assets of the business, consisting primarily of specially equipped trucks, in trust, and to treat the income of the business as income to the trust rather than to Krenzelok. Thereafter Krenzelok paid no personal income tax; nor did he file a tax return for the trust. While Krenzelok cleaned out septic tanks the Internal Revenue Service cleaned out Krenzelok's bank account, eventually seizing and selling at auction the trucks, which—since the trust was thoroughly bogus—the Service treated as Krenzelok's own property. Then the mail fraud began. Krenzelok and Freeman created backdated leases of the trucks, with the trust as lessor and Krenzelok as lessee, and instructed an associate of theirs (the make-believe trustee) to mail the leases to the people who had bought the trucks at the auction, informing them that they had acquired only Krenzelok's leasehold interest, that Krenzelok was behind in his payments, and that the buyers would have to either make good the arrearage (a total of several thousand dollars) or return the trucks to the trust. The buyers complained to the Internal Revenue Service.

At trial the government presented much evidence that the leases were phony and that Krenzelok had never made any payments to the trust. Krenzelok's principal defense was that he had relied on Freeman's assurances that the trust and the leases were valid and proper. Freeman, who represented himself at trial, had essentially no defense, beyond his argument that the case should be governed by the princi-

ples of the law of nature rather than the law of the United States because of the government's mendacious concealment of things ominous and astonishing such as that General MacArthur's superior in Korea was a Russian general and John Wilkes Booth's real name was Rothschild.

The only question that merits discussion is the admissibility of a statement that United States District Judge Robert Warren, who did not preside at the trial of Krenzelok and Freeman, had made to Krenzelok back in February 1986, several months before the mailings for which Freeman and Krenzelock were indicted. The occasion was a proceeding before Judge Warren by the Internal Revenue Service to collect unpaid taxes from Krenzelok. Krenzelok testified regarding the operations of the trust and at the end of the hearing Judge Warren told him, "I think it's self-evidence [sic] that the trust indentures in this instance, alleging the creation of the trusts in the hands of the Premm Company and the Kremp Company [names under which Krenzelok conducted his septic-tank-cleaning business] are fallacious as a matter of law, and are incompetent to create genuine trusts." This statement was admitted into evidence at the trial of Krenzelok and Freeman together with an instruction telling the jury that it was being admitted "for the sole limited purpose of showing what was said to Mr. Krenzelok, and that he heard those statements on February 7, 1986, ... so that the jury may consider what influence, if any, that may have, or what effect, if any, that may have on subsequent actions that Mr. Krenzelok took in this case." This was a convoluted way of telling the jury they could consider Judge Warren's statement only for its bearing on Krenzelok's defense that he had acted in good faith in mailing the backdated leases. Krenzelok and Freeman argue that the prejudicial effect of a federal judge's statement that the trust was invalid substantially outweighed its probative value, rendering it inadmissible under Rule 403 of the Federal Rules of Evidence.

The balancing of probative value and prejudicial effect, like other comparisons of intangibles, requires an exercise of judgment rather than a computation. Only in an extreme case are appellate judges competent to secondguess the judgment of the person on the spot, the trial judge. The present case is unusual but not extreme. It is unusual for a federal judge to appear, directly or indirectly, as a witness. There are exceptions: a case of criminal contempt for example, or a case in which a judge is called as a character witness for the defendant. It would be particularly unusual, and usually improper, for the judge in a criminal case to admit the testimony or other statement of another judge regarding a question of law. For with the diminishing exception of questions of foreign law, see Fed.R.Civ.P. 44.1 (adopted in 1966); Miller, *Federal Rule 44.1 and the "Fact" Approach to Determining Foreign Law: Death Knell for a Die–Hard Doctrine,* 65 Mich.L.Rev. 613 (1967), questions of law are not matters for proof at all; they are matters on which the presiding judge instructs the jury. If Judge Evans had admitted Judge Warren's statement for the purpose of proving that Krenzelok's trust was invalid, this would have been gratuitous; Judge Evans should simply have instructed the jury that the trust was invalid. But it would have been an error in Krenzelok's favor.

The statement, however, was not admitted to establish the invalidity of the trust, but to controvert Krenzelok's defense that he believed the trust to be valid. The significance of Judge Warren's testimony was that only a few months before attempting to enforce the trust through backdated leases, Krenzelok had been told unequivocally by a federal judge whose ruling he did not attempt to appeal that the trust was invalid. The fact that he had been told this was not only relevant to the government's effort to rebut Krenzelok's defense of good faith; it was—as Krenzelok's counsel acknowledged at oral argument—"indispensable." Its probative value was therefore great. Its prejudicial effect may well have been great too. But when the trial judge is in doubt, Rule 403 requires admission (this is the force of "*substantially* outweighed"); and when

the appellate judges are in doubt, a proper regard for the comparative advantages of trial and appellate judges counsels us to uphold the trial judge's application of the rule. It is unnecessary to add that any error in the admission of Judge Warren's statement was harmless. A rational jury could not have acquitted Krenzelok, who, even if he believed the trust valid, could not have believed that backdated leases, and false representations that he had made payments on them, were the proper means of enforcing the trust. To commit fraud in pursuit of a lawful end is nevertheless to commit fraud. Cf. *United States v. Malinowski*, 472 F.2d 850, 858 (3d Cir.1973).

AFFIRMED.