**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Daniel P. GLECIER, Defendant–Appellant.**

No. 88–3417.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 28, 1990.

Decided Jan. 8, 1991.

Rehearing and Rehearing En Banc Denied Feb. 1, 1991.

Thomas M. Durkin, Rocco J. DeGrasse, Asst. U.S. Attys., Office of the U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Jeffrey B. Steinback, Genson, Steinback & Gillespie, Chicago, Ill., William Hedrick, Skokie, Ill., for defendant-appellant.

Daniel P. Glecier, Chicago Ridge, Ill., pro se.

Before BAUER, Chief Judge, POSNER and MANION, Circuit Judges.

BAUER, Chief Judge.

In one of the last "Greylord" cases to make its way through our court, Daniel P. Glecier, a former judge of the Fifth Municipal District of the Circuit Court of Cook County, appeals his conviction for RICO conspiracy. Glecier raises a number of challenges to his conviction, only a handful of which merit discussion.[1] None of Gleci-

---

1. As for Glecier's challenges to certain jury instructions that the district court rejected and others that it gave, suffice it to say that, viewing the instructions as a whole and in light of the evidence and arguments at trial, we find no reversible error. *See United States v. McNeese,* 901 F.2d 585, 607–09 (7th Cir.1990); *United States v. Sims,* 895 F.2d 326, 329 (7th Cir.1990).

As for Glecier's challenge to the constitutionality of the RICO statute, *United States v. Ale-*

*man,* 609 F.2d 298, 305 (7th Cir.1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980), and the flood of cases from other circuits, *see, e.g., United States v. Tripp,* 782 F.2d 38, 42 (6th Cir.) (collecting cases), *cert. denied,* 475 U.S. 1128, 106 S.Ct. 1656, 90 L.Ed.2d 199 (1986), have settled that issue to our satisfaction. We also join the First and Third Circuits in re-affirming that the RICO statute is not unconstitutional despite Justice Scalia's statements

er's discussion-worthy challenges are particularly fact intensive. Thus, we will forego a lengthy recitation of the facts and instead briefly review any necessary background in the course of disposing of the issues.

## I. The Indictment

On March 16, 1988, the September 1986 Grand Jury returned a superseding indictment charging Glecier and nine co-defendants with fifteen counts of conspiracy, mail fraud and tax violations. The only portion of the indictment that names Glecier is Count One, which, as we discuss in detail below, charges him with conspiring to violate provisions of Illinois law in a context that implicates the Racketeer Influenced and Corrupt Organizations Act ("RICO"). 18 U.S.C. § 1962(d). Nowhere in the indictment is Glecier charged with personally committing predicate acts that implicate RICO.

Because Glecier's primary arguments on appeal center on the indictment, we will examine Count One in some detail. Count One begins by identifying the "enterprise" (the Circuit Court of Cook County), as well as the named co-conspirators and defendants and their positions. Paragraph 1(d)(2) identifies Glecier as "an Associate Judge assigned to the Fifth Municipal District from approximately July 23, 1979 to September 28, 1979 and again from approximately December, 1980 to December, 1987." (Glecier spent part of the time between these periods on assignment to Branch 27 at Harrison and Kedzie, outside of the Fifth District.) After identifying all the players and reproducing the Illinois statutes criminalizing bribery and official misconduct, Count One charges the following:

From in or about June, 1977 to in or about September, 1983, at Chicago Ridge, Oak Lawn, Justice, Worth, Summit, and elsewhere, in the Northern District of Illinois, Eastern Division, [Glecier and seven other defendants], being associated with an enterprise [the Circuit Court of Cook County], did knowingly conspire and agree, together with Roger Seaman [another defendant], and other judges assigned to the Fifth Municipal District, as well as Cary N. Polikoff [the last defendant], William H. Kampenga, Hugo Arquilla, and others known and unknown to the Grand Jury, to conduct and participate in the conduct of the affairs of the Circuit Court of Cook County, directly and indirectly, through a pattern of racketeering activity, as that term is defined in [18 U.S.C. § 1961], said racketeering activity consisting of multiple acts involving bribery under [Ill.Rev. Stat. ch. 38, secs. 33–1 & 33–3].

Count One goes on to describe the role played by defendant John W. Brady, a former assistant state's attorney, in the solicitation of willing participants in the scheme. Brady is alleged to have recruited both judges and attorneys in the Fifth Municipal District to take part in cash bribes. It is then alleged that Glecier participated in this scheme before he assumed the bench:

It was further part of the conspiracy that certain corrupt attorneys who practiced in the Fifth Municipal District, including JOHN W. BRADY, [five other defendants] and DANIEL P. GLECIER, as well as Cary N. Polikoff, William H. Kampenga, Hugo Arquilla, James J. Costello, Joseph McDermott, and others discussed at various times, among one another and with others, which judges, prosecutors and police officers would and did accept cash bribes from attorneys in exchange for favored treatment or to otherwise influence them in the performance of acts related to their employment and function as judges, prosecutors, and po-

---

concerning the pattern requirement in his concurrence in *H.J., Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 109 S.Ct. 2893, 2909, 106 L.Ed.2d 195 (1989) (Scalia, J., concurring) (*dictum*). *See United States v. Pungitore,* 910 F.2d 1084, 1102–05 (3rd Cir.1990); *United States v. Angiulo,* 897 F.2d 1169, 1179–80 (1st Cir.),

*cert. denied,* —— U.S. ——, 111 S.Ct. 130, 112 L.Ed.2d 98 (1990). *See also* Note, "Mother of Mercy—Is This The End of RICO?"—*Justice Scalia Invites Constitutional Void-for-Vagueness Challenge to RICO Pattern,* 65 Notre Dame L.Rev. 1106, 1132–44 (1990).

lice officers in the Fifth Municipal District.

Count One then describes how judges in the Fifth District [Glecier is not mentioned by name] solicited and accepted bribes for "steering" cases involving unrepresented defendants to attorneys who paid for that favor. Finally, in two of the last paragraphs in Count One, Glecier is again mentioned by name. Paragraph 10 lists him as one of the Fifth District judges who "did at various times unlawfully accept cash bribes from or on behalf of attorneys, including [six of the named defendants] and others known and unknown to the Grand Jury, pursuant to an understanding that they would be influenced in, and knowing that the cash bribes were tendered with the intention of influencing them in, the performance of acts related to their employment and function as judges." Paragraph 11 returns to Glecier's days as a trial lawyer, including his name in the list of attorneys from whom assistant state's attorneys Costello, Polikoff and Brady accepted bribes.

Glecier has alleged that, by failing to specify individual predicate acts of racketeering (i.e., listing the specific bribes by date and/or case name) about which Glecier is supposed to have conspired, the indictment violated the fifth and sixth amendments, Rule 7(c)(1) of the Federal Rules of Criminal Procedure, and the standards for RICO indictments we discussed in *United States v. Neapolitan*, 791 F.2d 489 (7th Cir.), *cert. denied*, 479 U.S. 939, 107 S.Ct. 421, 93 L.Ed.2d 371 (1986). Glecier first raised these challenges in a pre-trial motion to dismiss the indictment. In an order dated June 10, 1988, the district court denied that motion and ruled that Count One was sufficiently specific and informative under the legal standards for indictments. The court explicitly rejected Glecier's argument that, under *Neapolitan*, the specific predicate acts to which a RICO conspiracy defendant is alleged to have agreed constitute elements of the offense or otherwise

must be set forth in a RICO conspiracy indictment. Glecier charges error in these conclusions. As the issue here is the legal sufficiency of the indictment, we will review the matter afresh; although we note that "[i]n reviewing the sufficiency of an indictment, a court should consider the challenged count as a whole and should refrain from reading it in a hypertechnical manner." *United States v. Gironda*, 758 F.2d 1201, 1209 (7th Cir.1985) (citations omitted).

The fifth amendment, with exceptions not relevant here, limits the power of the federal government to hold someone to answer for a felony "unless on a presentment or indictment of a Grand Jury." U.S. CONST. amend V. The sixth amendment then grants to all persons accused by the federal government of a crime several basic rights, including the right "to be informed of the nature and cause of the accusation." U.S. CONST. amend VI. The courts have long held that these broad principles break down into three requirements (sometimes grouped as two requirements, *see, e.g., Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974)) for the sufficiency of an indictment: "The defendant is entitled to an indictment that [1] states all of the elements of the offense charged, [2] informs him of the nature of the charge so that a defense can be prepared, and [3] enables the defendant to evaluate any possible double jeopardy problems presented by the charge." *Neapolitan*, 791 F.2d at 500–01 (citations omitted). The RICO conspiracy count in the instant indictment meets these requirements.[2]

First, Count One properly alleges all the essential elements of RICO conspiracy. For purposes of clarity, we should note that "RICO conspiracy," strictly speaking, is a misnomer, insofar as it is used to imply a special substantive offense different from any other conspiracy under

**2.** We note that an indictment that meets these Constitutionally-inspired requirements also satisfies the specificity requirements of Fed.R. Crim.P. 7(c)(1), which states that "[t]he indict-

ment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." *See McNeese*, 901 F.2d at 604 n. 9.

18 U.S.C. § 371.[3] All that 18 U.S.C. § 1962(d), the "RICO conspiracy statute," provides is that it is unlawful "to conspire to violate any of the provisions of subsections (a), (b) or (c) of this section." Section 1962(c), the familiar "substantive" RICO provision, criminalizes the participation in the affairs of an enterprise affecting interstate commerce through a pattern of racketeering activity. Section 1962(d), like all conspiracy provisions, has as its target the act of agreement—here, the agreement to engage in activity that implicates section 1962(c). Accordingly, to list adequately the elements of section 1962(d), an indictment need only charge—after identifying a proper enterprise and the defendant's association with that enterprise—that the defendant knowingly joined a conspiracy the objective of which was to operate that enterprise through an identified pattern of racketeering activity (here, the "pattern" being multiple acts of bribery prohibited by specified provisions of the Illinois criminal code). Neither overt acts, *United States v. Torres Lopez,* 851 F.2d 520, 525 (1st Cir.1988), nor specific predicate acts that the defendant agreed personally to commit, *Neapolitan,* 791 F.2d at 495–98, need be alleged or proved for a section 1962(d) offense. As the above-quoted sections of Count One demonstrate, the instant indictment contains these requisite elements.

The indictment also satisfies the second and third requirements for indictment sufficiency. By specifying the time period during which the alleged conspiracy operated, the locations and courts, the principal actors, and, with some detail, the specific types of predicate crimes to be committed and the *modus operandi* of the conspiracy, the indictment adequately enabled Glecier to prepare a defense. Similarly, the specific, limiting information contained in Count One is sufficient to bar any subsequent prosecution for RICO conspiracy during the same time period and involving the same co-conspirators, enterprise and racketeering activities. *See United States v. Marren,* 890 F.2d 924, 934–35 (7th Cir.1989) (discussing and applying double jeopardy test for successive RICO conspiracy charges). Contrary to Glecier's argument, these notice and double jeopardy factors do not require the recitation of specific case names, dates, times, and places of alleged bribes. As we discuss below, the government did in fact present evidence at trial of specific cases and incidents in which Glecier agreed to give or take bribes. Count One was sufficiently precise even to allow Glecier to prepare to defend against this evidence, as the principal actors involved in these incidents, the method and context of these bribes, and the time period within which they took place are all contained within Count One.

The primary support Glecier cites for his contention that specific predicate acts to which he conspired should have been listed in the indictment is a passage in our opinion in *Neapolitan,* 791 F.2d 489. In the relied-upon passage, we addressed a claim by one of the defendants (Neapolitan) that the government improperly had exceeded the scope of the indictment by introducing at trial evidence of bribes that were not listed in the RICO conspiracy count.[4] The government responded to this claim by contending that the predicate acts unspecified in the indictment but proved at trial were not separate, charged offenses but evidentiary support for the conspiracy charge. To which we, in turn, responded as follows:

> [I]t would be sufficient, according to [the government's] argument, for the indictment to state that the defendant engaged in various acts of bribery. This argument misconceives the nature of any RICO offense. Under the statutory scheme the predicate acts are not only important "elements of the crime" but they are also, by definition, distinct offenses. Because RICO provides in-

---

**3.** We here paraphrase the more lengthy discussion of this point found in *Neapolitan,* 791 F.2d at 495.

**4.** We note that Glecier raises (in a summary fashion) this same challenge to his indictment. Just as the failure to specify in the indictment

every predicate crime introduced at trial did not require the disturbance of the conviction in *Neapolitan,* 791 F.2d at 501–02, any similar shortcoming in the instant indictment does not warrant reversal of Glecier's conviction.

creased penalties for the commission of these predicate crimes in a specified context, ... the failure to specify the underlying criminal activity in the indictment can effectively preclude the exact identification of what is being charged. RICO cannot be viewed as a complete offense distinct from the underlying crimes upon which it is based.

791 F.2d at 501.

This passage cannot support the weight placed upon it by Glecier. First, it most certainly does not stand for the proposition that RICO conspiracy indictments must list specific predicate acts in which the defendant was involved. It so happens that the RICO conspiracy count at issue in *Neapolitan* did list particular acts of bribery in which Neapolitan and the other defendants were involved, which explains why the government got into trouble when it sought to prove the conspiracy charge against Neapolitan with evidence of other crimes not contained in the count. Thus, we found that these unspecified crimes were "largely irrelevant to the establishing of the RICO conspiracy *alleged by the government in this case." Id.* at 500 (emphasis in original). Second, even apart from this contextual difference, the instant indictment does not run afoul of the principles espoused in the quoted passage from *Neapolitan.* At most, that language sets an outer boundary for RICO conspiracy indictments at a mere allegation of "various acts of bribery." As detailed above, Count One contains sufficient information to fall well within that boundary. And finally, Glecier's argument based on this passage simply cannot be a correct statement of the law. If the government were required to identify, in indictments charging violation only of section 1962(d), specific predicate acts in which the defendant was involved, then a 1962(d) charge would have all of the elements necessary for a substantive RICO charge. Section 1962(d) would thus become a nullity, as it would criminalize no conduct not already covered by sections 1962(a) through (c). Such a result, quite obviously, would violate the statutory scheme in which conspiracy to engage in the conduct described in sections

1962(a) through (c) is itself a separate crime. As mentioned above, that separate crime centers on the act of *agreement,* which makes unnecessary—and in many cases impossible—the identification in the indictment of specific predicate acts that have come to fruition.

Thus, the indictment is sufficient under the Constitution, the Federal Rules and the case law. *Cf. United States v. Sutherland,* 656 F.2d 1181, 1197 (5th Cir.1981) (similar "lack of specificity" challenge to RICO conspiracy indictment rejected where indictment identified the pattern of racketeering activity as "a number of bribes that occurred between November 1975 and January 1980"), *cert. denied,* 455 U.S. 949, 102 S.Ct. 1451, 71 L.Ed.2d 663 (1982). *See also United States v. Phillips,* 874 F.2d 123, 127–28 n. 4 (3rd Cir.1989).

## II. The Motion for a Bill of Particulars

 Related to his attack on the legal sufficiency of the indictment, Glecier has claimed that the indictment's lack of specificity created a danger of prejudicial surprise and prevented him from adequately preparing for his defense, mandating a bill of particulars. This issue was first presented to the district court in a joint motion by the defendants. Satisfied with the clarity of the indictment, impressed by the volume of documents and records the government had made available to the defendants during discovery, and concerned that the defendants were merely seeking to discover the evidentiary details of the prosecution's case to which they had no right, the court denied the defendants' motion for a bill of particulars. As the government was quick to point out, that decision rests within the sound discretion of the trial court:

> We will reverse a trial court's decision to deny a [motion for a bill of particulars] "only when the trial court clearly abuses its discretion." *United States v. Andrus,* 775 F.2d 825, 843 (7th Cir.1985). Beyond this, we will recognize such an abuse only where the defendant suffers actual prejudice from the denial. *Id. See also United States v. Johnson,* 504

F.2d 622, 627 (7th Cir.1974). We have consistently held that where the indictment provides sufficient information to inform the defendant of the nature of the charges against him, and the government provides the defendant with information about the alleged overt acts and co-conspirators prior to trial, the defendant has not suffered prejudice from the refusal of the request for a bill of particulars. *Andrus*, 775 F.2d at 843. *See also United States v. Kendall*, 665 F.2d 126, 134–35 (7th Cir.1981).

*United States v. McAnderson*, 914 F.2d 934, 946 (7th Cir.1990). More broadly, the defendant's constitutional rights under the fifth and sixth amendments require that he be informed of the nature of the offense charged to allow him to prepare a defense and to protect his double jeopardy rights; they do not require the government to reveal the details of how it plans to prove its case. *See Kendall*, 665 F.2d at 135.

The indictment and the government's other pre-trial disclosures (and it is proper to look to post-indictment discovery when considering whether a bill of particulars is required, *see, e.g., United States v. Lavin*, 504 F.Supp. 1356, 1361–62 (N.D.Ill.1981)) provided Glecier with sufficient information concerning the charges against him in the absence of a bill of particulars. First, Glecier had the indictment, which sets forth the time period, the enterprise, the locations, the names of the primary actors, and the methods, means and nature of the racketeering activity. The indictment also refers to Glecier's days both as a private practitioner and as a judge, and thus his argument of "actual surprise" from the fact that one government witness testified as to Glecier's activities before he assumed the bench rings hollow. Second, Glecier had the information that the government made available through discovery, which included voluminous public records and potential *Brady* material, (*see Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)), all tape recordings of the defendants, and all material covered by the Jencks Act, 18 U.S.C. § 3500. The government also gave notice to any interested defendant of the names of all co-conspirators not identified in the indictment, as well as the names of cooperating coconspirators it intended to call at trial, one of whom was made available to Glecier's counsel for pre-trial interview.[5] Finally, the individuals, locations, methods, and case details relating to the *specific* bribes involving Glecier to which the government witnesses testified at trial were in fact listed in the government's *Santiago* proffer (*see United States v. Santiago*, 582 F.2d 1128 (7th Cir.1978)), which Glecier's counsel received well before any of these witnesses testified or this evidence was introduced. Indeed, the fact that Glecier's counsel referred to the subject state cases by name during his opening argument indicates that Glecier was in fact apprised of these cases before trial. So, even granting that it would have been preferable if the government (assuming it was in full possession of these details) had revealed to Glecier before trial the case names and dates of the state court cases in a bill of particulars, the district court's refusal to order the government to do so was not a clear abuse of discretion in light of the extensive pre-trial disclosure that did take place.

### III. Evidentiary Rulings

■ Leaving Glecier's pre-trial challenges behind, we move to the trial. Glecier was tried jointly with two of his nine co-defendants (the other seven pleaded guilty, one on the first day of trial). Both of Glecier's trial co-defendants also were charged in Count One with membership in the conspiracy that implicated RICO. One of them was, like Glecier, a former judge in the Fifth Municipal District.

As indicated above, among the evidence the government offered in its case-in-chief against Glecier was the testimony of co-conspirators concerning specific state court cases involving Glecier in which bribes had allegedly taken place. Glecier's trial coun-

---

**5.** The extent of pre-trial discovery is the primary factor that distinguishes this case from *United*

*States v. Davidoff*, 845 F.2d 1151 (2d Cir.1988), relied upon by Glecier.

sel attempted to cross-examine the government witnesses who presented this evidence as to the details of the underlying state cases. The district court, however, did not allow Glecier's counsel to do so. The court also denied the admission of state court transcripts and other evidence proffered in Glecier's defense case, which evidence similarly would have gone to the details of the underlying state cases. The court refused to allow this kind of evidence on the ground that any probative value it might have had was outweighed by the danger that the jury would be misled and confused, in that Glecier's counsel was asking the jury to assess the correctness of the disposition of these state cases. *See* Fed.R.Evid. 403. Glecier claims that the court's ruling was both selective and unfairly prejudicial: the former because, according to Glecier, counsel for his co-defendants and for the government were permitted to explore the facts of subject state cases, and the latter because the refusal precluded Glecier from providing the jury with relevant evidence that would have cast doubt upon the efficacy (and thus likelihood) of the alleged bribes in the subject cases.

Appellants who challenge evidentiary rulings of the district court are like rich men who wish to enter the Kingdom; their prospects compare with those of camels who wish to pass through the eye of a needle. *See* Matthew 19:24. In more secular terms, to prevail in this challenge, Glecier must establish that Judge Norgle abused his wide discretion in managing cross-examination and ruling on the admissibility of evidence. *See United States v. Carter,* 910 F.2d 1524, 1530 (7th Cir.1990); *McNeese,* 901 F.2d at 598. Further, because it is a "comparison of intangibles," a district court's Rule 403 balancing is afforded a special degree of deference: "Only in an extreme case are appellate judges competent to second-guess the judgment of the person on the spot, the trial

judge." *United States v. Krenzelok,* 874 F.2d 480, 482 (7th Cir.1989).

Applying these principles, we conclude that Glecier has failed to establish sufficient error in the district court's Rule 403 rulings to warrant a reversal of his conviction. The record reveals that the district court did not preclude Glecier's counsel from vigorously cross-examining government witnesses. To the contrary, Glecier's counsel was given substantial latitude to attack the witnesses with, among other things, additional details concerning the events to which they testified, as long as the questions were directed toward establishing interest, bias, prejudice or some other proper purpose. What the court would not allow, either in cross-examination or in Glecier's defense case, was a detailed exposition of the details of the underlying state cases. This refusal was consistent with the court's general order preventing counsel for all parties from delving into the state cases so as to set up the jury in this case as a "super-" or "appellate-jury," whose putative job it would be to second-guess the propriety of the rulings in and resolutions of the state cases. Contrary to Glecier's suggestion, the court enforced this order against counsel for Glecier's co-defendants as well, and cautioned counsel for the government when its questioning threatened to open the door to such issues.[6] Not only was the court's limiting order evenly applied, but also it was consistent with the Illinois bribery statute that Glecier was accused of violating, which only requires that he accepted property knowing that it was tendered with the intent to influence the performance of his public function as a judge, *not* that the bribe actually affected the resolution of the case. *See United States v. Garner,* 837 F.2d 1404, 1420–21 (7th Cir.1987), *cert. denied,* 486 U.S. 1035, 108 S.Ct. 2022, 100 L.Ed.2d 608 (1988). Thus, we find no reversible error in the district court's evidentiary rulings under Rule 403 and in its management of cross-examination concerning the underlying state cases.

6. To the extent that the court did allow the admission of certain evidence or transcript portions relating to state court cases at the request of counsel for co-defendants or the government, the record reveals that the evidence was relevant to and offered for some purpose *other than* an exploration of the merits or outcome of the subject state case.

## IV. Conclusion

At oral argument, counsel for Glecier summarized his primary argument by stating that, because of the indictment's lack of specificity, Glecier "hardly knew what hit him." Reviewing the challenged count in light of established standards for RICO conspiracy indictments, we conclude that Glecier was given sufficient information concerning what was to "hit him" to satisfy federal law. Glecier's other arguments similarly fail to establish reversible error by the district court, and therefore Glecier's conviction is

AFFIRMED.