111 F.3d 134
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Catalino ROSARIO, a/k/a Arturo Robles, a/k/a Ruffino Rey,
Defendant-Appellant.
 No. 96-3056.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 21, 1997.
Decided April 11, 1997.
 
 Before COFFEY, MANION and DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 In May 1994 a grand jury in Chicago returned an indictment charging defendant Catalino Rosario, along with Frank Vargas and Profirio Rivera, with conspiracy to distribute kilogram quantities of cocaine during an eight-month period between summer 1993 and April 1994. The indictment described a basic drug operation in which Rosario brought cocaine to Chicago from "states other than Illinois" and then redirected the drug money to "locations outside of Illinois." Vargas and Rivera pleaded guilty shortly after the indictment was issued.
 
 
 2
 The case against Rosario lingered in the district court from 1994 to 1996.[1] Then, on August 7, 1996, the morning trial was scheduled to begin, Rosario's lawyer filed a motion in limine seeking to bar certain evidence from being introduced by the government at trial. The defense wanted to exclude evidence relating to a 55-count indictment against Rosario returned in November 1993 in the Northern District of New York.[2] In addition, Rosario's lawyer objected to the introduction of any evidence relating to Rosario's trips from Chicago to New York state to purchase drugs. In its motion papers before the district court, defense counsel noted that the Chicago indictment "never mention[ed] that the conspiracy included travels to New York State," but did refer to Rosario's alleged transport of cocaine from Los Angeles to Chicago. At the motion hearing, the lawyer explained that he had not realized the government intended to include evidence relating to Rosario's alleged New York-Chicago drug operation until one week earlier when served with discovery materials, including a copy of the New York indictment and a description of the New York dealings within the plea agreements of Vargas and Rivera.
 
 
 3
 The government countered that its New York evidence did not relate to the New York indictment, that its post-indictment discovery materials (if not the indictment itself) placed Rosario on notice that his alleged New York-Chicago drug operations fell within the charged conspiracy, and that, at most, the court should order a continuance so that Rosario could prepare a case against the New York evidence. The district court rejected the possibility of a continuance, granted the defendant's motion in its entirety, and proceeded to empanel the jury until the government filed this appeal pursuant to 18 U.S.C. § 3731.[3] We review the court's order excluding the evidence for an abuse of discretion. United States v. Glecier, 923 F.2d 496, 503 (7th Cir.1991).
 
 
 4
 An indictment is sufficient if it "adequately apprises the defendant of the charge against him so that he can prepare a defense and plead any judgment which may be rendered as a bar to further prosecution." United States v. Spears, 965 F.2d 262, 279 (7th Cir.1992). If the indictment is brought under 21 U.S.C. § 846, as in this case, it is sufficient if it alleges a conspiracy to distribute drugs, the time frame involved in the conspiracy, and the statute allegedly violated. Id. The indictment against Rosario satisfied this standard by charging him with conspiring with others "to distribute kilogram quantities of cocaine" from "early Summer 1993 ... through April 17, 1994" in violation of 21 U.S.C. §§ 841(a)(1), 846. It is irrelevant that the indictment does not specifically name "New York" as one of the states in which Rosario allegedly purchased drugs; the government has no duty to provide a defendant with such specificity. Id.
 
 
 5
 At bottom, Rosario argues that the indictment misled him when it named some cities (Los Angeles, CA; Bedford Park, IL; Springfield, MO) in which Rosario allegedly conspired but contained no mention whatsoever of New York. But nothing in the indictment limits the government's case to those cities, and the government's post-indictment discovery disclosures should have alerted Rosario to the New York evidence. See Glecier, 923 F.2d at 502 ("[i]t is proper to look to post-indictment discovery when considering whether a bill of particulars is required").
 
 
 6
 As early as October 1994, the government sent Rosario's lawyer a copy of a "DEA-6 Form," the Drug Enforcement Agency's investigative report form. The four-page report detailed the arrest of Vargas in April 1994 and his statement concerning his work for Rosario. Vargas related that during the prior eight months, he had transported cocaine from New York to Chicago on at least six separate occasions; that all of the transportation (totaling in the millions of dollars) had been orchestrated by "Pacho," whom both parties understood to be Rosario; and that $500,000 of Pacho's money had been seized by authorities from the residence of his girlfriend. Further, the report concerning Vargas was not buried in a heap of discovery materials; it was the only enclosure with the letter sent to Rosario's lawyer nearly two years before the August 1996 trial date.
 
 
 7
 Other circumstances placed Rosario on notice that the charged conspiracy related in large part to his New York dealings. Vargas' plea agreement detailed his trips to New York to purchase drugs purportedly on Rosario's behalf. That plea agreement was a matter of public record in August 1994; the government also provided Rosario's lawyer with a copy approximately one week before trial. Moreover, the timeline provided by Vargas should have alerted Rosario to the New York evidence. According to Vargas, the conspiracy to transport drugs to Chicago from New York began eight months prior to his arrest in April 1994, which tracks the time period contained in the indictment.
 
 
 8
 In addition to asserting lack of notice, Rosario contends that the government's New York evidence must be barred because it "overlaps" with the New York indictment. He is mistaken. A second indictment alleging the exact same conduct as the first might raise a double jeopardy issue, but even Rosario concedes that jeopardy has yet to attach with respect to either the New York or Chicago case. In all events, we see little overlap between the indictments. While each charges a conspiracy to distribute drugs, the core of the New York indictment involves Rosario's alleged attempts to bribe officials of the INS to secure "resident alien" status. The slight overlap in the time frame of the two alleged conspiracies means only that Rosario is thought capable of participating in two drug conspiracies at the same time. At the motion hearing, the government did its part to clear up any confusion concerning the relationship between the two indictments by stating that it intended to steer clear of the New York indictment during the trial.
 
 
 9
 We are aware that "[t]he morning docket of a district court judge is usually quite busy," and "[r]esolving motions in limine, considering the mix of other concerns on the morning of the scheduled start of a trial, further intensifies the time pressure on the trial judge." United States v. Buckner, 91 F.3d 34, 36 (7th Cir.1996). The pressures are increased by motions in limine that "ask for an evidentiary call before the judge really knows enough about the context of the case to make a reasonable ruling." Id. On the morning of the scheduled start of the trial, the district court in this case was faced with Rosario's motion to bar the New York evidence. After hearing argument on the motion, the district court determined that it had a choice among three alternatives: (1) grant the motion barring the evidence and proceed to trial; (2) deny the motion and proceed to trial; or (3) grant a continuance to accommodate defense counsel's claim of insufficient notice. Based on this record, we conclude that either the second (deny the motion and proceed to trial) or third (grant a continuance) alternatives would have been appropriate. But the district court chose the first. While in the abstract a short continuance would seem to have been a reasonable compromise, the court was confronted with some strict time constraints, both personal and judicial. Thus it exercised the strictest option. In so doing, it excluded a substantial portion of the government's case against Rosario even though he had ample time to prepare his defense.
 
 
 10
 This decision in no way reflects our opinion concerning the strength or probity of the New York evidence, nor does it bind the district court judge who is assigned to this case on remand to particular evidentiary decisions. We simply determine that the New York evidence is part of the government's case against the defendant.
 
 
 11
 The order of the district court is REVERSED, and the case is REMANDED for proceedings consistent with this opinion.
 
 
 
 [1]
 Although there were several motions and rulings on motions to quash or suppress, it is unclear from the record why the delay in this case was so extensive. Nevertheless, the delays leading up to the scheduled trial are not an issue in this appeal
 
 
 [2]
 That indictment charged Rosario with conspiring to secure Immigration and Naturalization Service documentation in exchange for narcotics
 
 
 [3]
 This Section allows an appeal by the United States to "a court of appeals from a decision or order of a district court suppressing or excluding evidence ... not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding."