**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 1, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

CHESTER RANDALL, JR., a/k/a "Insane June,"

      Defendant-Appellant.

No. 10-3113

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 6:07-CR-10143-06)**

---

Carl Folsom of Bell Folsom, P.A., Lawrence, Kansas, for Defendant-Appellant.

James A. Brown, Assistant United States Attorney (Barry R. Grissom, United States Attorney, with him on the brief), Topeka, Kansas, for Plaintiff-Appellee.

---

Before **MURPHY, EBEL,** and **TYMKOVICH,** Circuit Judges.

---

**EBEL**, Circuit Judge.

---

      A jury convicted Defendant-Appellant Chester Randall, Jr., of one count of

conspiracy to commit a Racketeer Influenced and Corrupt Organizations Act (RICO)

violation. The district court then sentenced Randall to forty-six months' imprisonment.

Randall now appeals to this Court, arguing (1) that the district court abused its discretion

by failing to instruct the jury about the affirmative defense of withdrawal from a

conspiracy, (2) that the district court plainly erred by failing to instruct the jury that it had

to agree unanimously on the predicate acts Randall agreed to in order to sustain a

conviction for conspiracy to commit a RICO violation, and (3) that the cumulative effect

of these alleged instructional errors deprived Randall of a fair trial. Exercising

jurisdiction under 28 U.S.C. § 1291, we AFFIRM.

## I. BACKGROUND

This case stems from the prosecution of various members of the Crips, a

prominent street gang in Wichita, Kansas.[1] Within the Crips, several "sets," or groups,

exist, including the Neighborhood Crips, the Deuce Trey Crips, the Tre Five Seven Crips,

and the Insane Crips. Randall was, at least at one point in time, a member of the Insane

Crips, and he allegedly sold controlled substances for the Crips at various points in time

between 1991 and 2007.

Randall explained at trial that he joined the Crips when he was somewhere

between the age of thirteen to sixteen years old. When Randall was spending time in

prison on drug charges as a teenager, he tried to distance himself from the Crips by

---

[1] Randall was initially indicted along with six other defendants, though only two of those defendants ended up going to trial with him. One of the other defendants, Clinton Knight, also appealed to this Court in a companion case, United States v. Clinton Knight, No. 10-3087.

participating in anti-gang programs, covering up some of his gang tattoos, and informing officials of the Kansas Department of Corrections (DOC) that he was no longer part of a gang.

Upon his release from prison, Randall secured a job as a mechanic, had children, and started attending church. But sometime in 2005, Randall began using drugs again. At trial, Randall admitted that between 2005 and 2007, he purchased drugs from various members of the Crips. Further, Mary Dean, a former girlfriend of a Crips member, testified that during this time period Randall sold ecstasy at a bar frequented by Crips members. Finally, in January of 2007, Michael Austin, a Tre Five Seven Crip and confidential informant, attempted to make two drug buys while equipped with a video recording device. One of those video recordings shows Randall at the attempted drug buy.

A grand jury indicted Randall, along with six other defendants, on July 27, 2007. Randall was charged with one count of a RICO violation (Count 1), one count of conspiracy to commit a RICO violation (Count 2), one count of conspiracy to distribute crack cocaine (Count 3), and one count of conspiracy to distribute marijuana (Count 4). A jury convicted Randall of Count 2. The district court then sentenced Randall to forty-six months' imprisonment, and Randall timely appealed.

## II. DISCUSSION

### A. Withdrawal from a Conspiracy

The first issue we must address in this appeal is whether the district court abused its discretion by failing to instruct the jury about the affirmative defense of withdrawal from a conspiracy. We conclude that it did not.

This Court reviews a district court's refusal to give a requested theory of defense instruction for abuse of discretion. United States v. Turner, 553 F.3d 1337, 1347 (10th Cir. 2009). If supported by the evidence and the law, a criminal defendant is entitled to a jury instruction concerning his theory of defense, in this case withdrawal from the conspiracy. United States v. Visinaiz, 428 F.3d 1300, 1308 (10th Cir. 2005). "For the purposes of determining the sufficiency of the evidence to raise the jury issue, the testimony most favorable to the defendant should be accepted." United States v. Al-Rekabi, 454 F.3d 1113, 1121 (10th Cir. 2006) (internal quotation marks omitted). "[I]t is essential that the testimony given or proffered meet a minimum standard as to each element of the defense so that, if a jury finds it to be true, it would support an affirmative defense . . . ." United States v. Bailey, 444 U.S. 394, 415 (1980).

"During the existence of a conspiracy, each member of the conspiracy is legally responsible for the crimes of fellow conspirators." United States v. Russell, 963 F.2d 1320, 1322 (10th Cir. 1992) (citing Pinkerton v. United States, 328 U.S. 640, 646-47 (1946)). But a conspirator is only liable for the acts of coconspirators "until the

4

conspiracy accomplishes its goals or that conspirator withdraws." United States v. Brewer, 983 F.2d 181, 185 (10th Cir. 1993) (citing Hyde v. United States, 225 U.S. 347, 369 (1912)). "In order to withdraw from a conspiracy an individual must take affirmative action, either by reporting to the authorities or by communicating his intentions to the coconspirators." United States v. Powell, 982 F.2d 1422, 1435 (10th Cir. 1992). "Mere cessation of one's participation in a conspiracy is insufficient to demonstrate withdrawal." United States v. Hughes, 191 F.3d 1317, 1321 (10th Cir. 1999).

This Court has not yet applied this standard to a gang member who allegedly withdrew from a gang, though one of our sister circuits has dealt with this situation. The Eleventh Circuit requires, just as we do, that to establish the affirmative defense of withdrawal from a conspiracy, a defendant must disclose the scheme to law enforcement authorities or make a reasonable effort to communicate his withdrawal to his coconspirators. See United States v. Starrett, 55 F.3d 1525, 1550 (11th Cir. 1995); see also United States v. Arias, 431 F.3d 1327, 1340-42 (11th Cir. 2005). In Starrett, the Eleventh Circuit addressed whether a motorcycle gang member's alleged withdrawal met this standard. Starrett, 55 F.3d at 1550. The gang member explained that he added an "out date" to his gang tattoo, sold his motorcycle, joined a church, got a job, and "cut off virtually all contact" with other gang members. Id. The Eleventh Circuit concluded that these actions alone were insufficient to satisfy the requirement that the defendant either disclose the criminal scheme to law enforcement or communicate his withdrawal to his coconspirators. Id.

5

Randall bases his withdrawal defense on the following facts: Randall told a DOC official that he was no longer part of a gang; he had children; he got a job as a mechanic; and he started going to church. Like the Eleventh Circuit in <u>Starrett</u>, we conclude that Randall failed to establish that he either reported the conspiracy to the authorities or communicated his intentions to his coconspirators.

Getting involved in a conspiracy, particularly a gang, is a risky endeavor because of the difficulty of getting out. We have stated on many occasions, "[m]ere cessation of one's participation in a conspiracy is insufficient to demonstrate withdrawal." <u>Hughes</u>, 191 F.3d at 1321. We continue to emphasize that a conspirator must do more than simply cease participation in the conspiracy to meet the legal standard for withdrawal. But this Court has not often described with any detail where mere cessation ends and sufficient withdrawal begins. Thus, we take this opportunity to elucidate what is required to withdraw from a conspiracy.

In order to withdraw from a conspiracy, a conspirator must attempt to undo the wrong that has been done in one of two ways. First, a coconspirator can give authorities information with sufficient particularity to enable the authorities to take some action to end the conspiracy. "Authorities" does not mean just any government official or entity, but rather an official who has some ability to act on the information given in an attempt to end the conspiracy. For instance, a gang member could go to a local police station and reveal information about the gang in an attempt to help the police set up a sting operation to end the conspiracy. Or if a conspiracy were occurring within a prison, a conspirator

6

could similarly give a prison official details of the conspiracy that could be used to end it.

In this case, Randall's vague statement to a DOC official that he was no longer part of a gang does not rise to the level required for withdrawing from a conspiracy. Randall's statement did not contain any, let alone sufficient, particularity to enable authorities to end the conspiracy. The record does not even reveal that Randall told the DOC official what gang he was in or what, if any, illegal activity the gang was involved with that might invoke the interest of the DOC. Insofar as we can infer, this barebones statement is nothing more than the run of the mill statement that prisoners often make to prison officials to convince them that they no longer present a threat to society and so should get a break. That is not enough.

A second way that a conspirator can withdraw from a conspiracy is to communicate his withdrawal directly to his coconspirators in a manner that reasonably and effectively notifies the conspirators that he will no longer be included in the conspiracy, in this case the gang, in any way. Communicating such an intent to coconspirators, however, requires more than implied dissociation. It must be sufficiently clear and delivered to those with authority in the conspiracy such that a jury could conclude that it was reasonably calculated to make the dissociation known to the organization. Simply not spending time with coconspirators is not enough to satisfy this standard.

Randall argues that Crips members could withdraw from the gang not "so much by words as by actions." (Aplt. B. at 12.) Randall relies on the testimony of a gang

7

expert who explained at trial that gang members could leave by "maturing out," or in other words "getting a good job, having children, or just getting more involved in other activities in life." (Id.) Thus, Randall argues that he did not need to communicate his withdrawal to other Crips members because he matured out of the gang.

Randall's argument is unavailing. He never testified that he told any Crips members that he no longer wanted to be part of the gang, let alone that he communicated this intent effectively to those in control of the gang. Randall claims that he simply stopped spending time with Crips members, but as we explained above that is not enough. "Maturing out" of a gang, without more, does not meet the legal definition of withdrawal from a conspiracy. If Randall matured out of the gang and explicitly communicated to the Crips members that he no longer would be involved with the gang in any way, then this would be a different case. But on the record before us, there is no evidence that Randall conveyed to the Crips organization that he would no longer be any part of the gang or of the gang's activities. Merely hoping that the Crips organization would infer his withdrawal from his absence is not enough. The communication must be unambiguous and effective. Therefore, Randall did not satisfy this avenue of withdrawing from a conspiracy.

We emphasize the long-standing principle that "a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." Mathews v. United States, 485 U.S. 58, 63 (1988) (citing Stevenson v. United States, 162 U.S. 313, 314 (1896)). But in this case, Randall

8

did not provide sufficient evidence for a reasonable jury to find in his favor. Thus, we cannot say that the district court abused its discretion by failing to give the requested instruction.

## B. Predicate Acts

Next, we must determine whether the district court plainly erred by failing to instruct the jury that it had to agree unanimously on the predicate acts that Randall agreed to in order to sustain a conviction for conspiracy to commit a RICO violation under 18 U.S.C. § 1962(d). Again, we conclude that it did not.

Because Randall did not object below, this Court reviews the district court's instruction for plain error. See Fed. R. Crim. P. 52(b). "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Gonzales-Huerta, 403 F.3d 727, 732 (10th Cir. 2005) (en banc). "An error in a jury instruction is 'plain' if it is obvious or clear, i.e., if it [is] contrary to well-settled law." United States v. Duran, 133 F.3d 1324, 1330 (10th Cir. 1998).

Randall argues that it was not enough that the district court instructed the jury that it had to be unanimous "as to which type or types of predicate racketeering activity [he] agreed would be committed." (Aplt. B. at 16.) Instead, Randall believes that "the jury should have been instructed that it needed to be unanimous as to the specific predicate acts that supported the RICO conspiracy charge." (Id. At 16)

The district court's instruction on this point was as follows:

9

Under Count 2, you may find that a defendant entered into the requisite agreement to violate the racketeering statute when the government has proven beyond a reasonable doubt that the defendant agreed with at least one other co-conspirator that at least two racketeering acts would be committed by a member of the conspiracy in the conduct of the affairs of the enterprise. The government is not required to prove that the defendant personally committed two racketeering acts, or that he agreed to personally commit two racketeering acts. Rather, the government must prove beyond a reasonable doubt that the defendant agreed to participate in the enterprise with the knowledge and intent that at least one member of the racketeering conspiracy (which could be the defendant himself) would commit at least two predicate racketeering acts in the conduct of affairs of the enterprise.

You are not limited to considering only the specific racketeering acts alleged in Count 1 of the Indictment; you may also consider evidence presented of other racketeering acts committed or agreed to be committed by any co-conspirator in furtherance of the enterprise's affairs, including racketeering acts in which the defendant is not named in the indictment, to determine whether the defendant agreed that at least one member of the conspiracy would commit two or more racketeering acts.

In order to convict a defendant under Count 2, <u>your verdict must be unanimous as to which type or types of predicate racketeering activity the defendant agreed would be committed</u>; for example, at least two acts of drug trafficking.

(Doc. 413 at 32 (emphasis added).)[2]

Title 18 U.S.C. § 1962(d), under which Randall was convicted, provides that "[i]t

shall be unlawful for any person to conspire to violate any of the provisions of subsection

---

[2] This Court's local rules require an appellant to "designate a record on appeal that is sufficient for considering and deciding the appellate issues."  10th Cir. R. 10.3(A). "When the party asserting an issue fails to provide a record sufficient for considering that issue, the court may decline to consider it."  10th Cir. R. 10.3(B).  In this case, Randall failed to include the jury instruction that he appeals.  That is grounds for our refusal to consider the issue.  But we will continue to consider Randall's appeal of this instruction only because the Government agrees with Randall concerning the operative language of the challenged instruction.

(a), (b), or (c) of this section." Randall's conspiracy conviction was based on a violation

of § 1962(c), which reads as follows:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).

In Salinas v. United States, the Supreme Court interpreted the interplay between

§ 1962(c) and (d) and concluded that subsection (d) covers "an actor who does not

himself commit or agree to commit the two or more predicate acts requisite to the

underlying offense." 522 U.S. 52, 65 (1997). Therefore, a defendant can be convicted

under subsection (d) for "adopt[ing] the goal of furthering or facilitating the criminal

endeavor" without committing or agreeing to commit two or more of the predicate acts.

Id.; see also United States v. Smith, 413 F.3d 1253, 1265 (10th Cir. 2005) ("Because this

conspiracy provision lacks an overt act requirement, a defendant can be convicted under

§ 1962(d) upon proof that the defendant knew about or agreed to facilitate the

commission of acts sufficient to establish a § 1962(c) violation."), abrogated on other

grounds by United States v. Hutchinson, 573 F.3d 1011 (10th Cir. 2009). Thus, a RICO

conspiracy charge need not specify the predicate racketeering acts that the defendant

agreed would be committed.

Based on Salinas, a few of our sister circuits have concluded that it is not

necessary to prove the specific predicate acts that supported a RICO conspiracy charge in

11

order to prove a defendant's participation in a RICO conspiracy. See United States v. Applins, 637 F.3d 59, 80–82 (2d Cir. 2011); United States v. Hein, 395 F. App'x 652, 656 (11th Cir. 2010) (unpublished); United States v. Glecier, 923 F.2d 496, 500 (7th Cir. 1991). We agree with that conclusion.

Unanimity as to the specific predicate acts is not required because the only charge is conspiracy, in violation of 18 U.S.C. § 1962(d), rather than a substantive RICO offense:

> [T]o list adequately the elements of section 1962(d), an indictment need only charge . . . that the defendant knowingly joined in a conspiracy the objective of which was to operate that enterprise through an identified pattern of racketeering activity . . . . Neither overt acts, nor specific predicate acts that the defendant agreed personally to commit, need be alleged or proved for a section 1962(d) offense.

Glecier, 923 F.2d at 500 (internal citations omitted).

In Glecier, the defendant argued that because an indictment charging a RICO conspiracy failed to specify the individual predicate acts of racketeering, it violated the Fifth and Sixth Amendments. Id. at 499. In rejecting that argument, the Seventh Circuit explained as follows:

> If the government were required to identify, in indictments charging violation only of section 1962(d), specific predicate acts in which the defendant was involved, then a 1962(d) charge would have all of the elements necessary for a substantive RICO charge. Section 1962(d) would thus become a nullity, as it would criminalize no conduct not already covered by sections 1962(a) through (c). Such a result, quite obviously, would violate the statutory scheme in which conspiracy to engage in the conduct described in sections 1962(a) through (c) is itself a separate crime . . . . [T]hat separate crime centers on the act of *agreement*, which makes unnecessary—and in many cases impossible—the identification in

12

the indictment of specific predicate acts that have come to fruition.

Id. at 501.  Thus, the Seventh Circuit concluded that the "specific predicate acts that the defendant agreed personally to commit need [not] be alleged or proved for a section 1962(d) offense."  Id. at 500 (internal citation omitted).

While Glecier did not directly address the individual predicate act issue in the context of a jury instruction, a case from another one of our sister circuits did.  In United States v. Applins, the Second Circuit rejected the precise argument that Randall makes on appeal.  In Applins, the district court instructed the jury that to find the defendants guilty of a conspiracy to commit a RICO violation, the jury had to "find that each defendant agreed to the commission of at least two racketeering acts."[3]  637 F.3d at 80.  The district

---

[3] We find Applins particularly persuasive because the instruction given by the district court is largely verbatim to the instruction given in this case.  And when the language is not verbatim, the substance remains the same.  In Applins, the district court instructed the jury as follows:

> [T]he agreement to commit a RICO offense is the essential aspect of a RICO conspiracy offense.
>
> You may find that a defendant has entered into the requisite agreement to violate RICO when the Government has proven beyond a reasonable doubt that the defendant agreed with at least one other co-conspirator that at least two racketeering acts would be committed by a member of the conspiracy in the conduct of the affairs of the enterprise. The Government is not required to prove that the defendant personally committed two racketeering acts or that he agreed to personally commit two racketeering acts. Rather, the Government must prove beyond a reasonable doubt that the defendant agree[d] to participate in the enterprise with the knowledge and intent that at least one member of the RICO conspiracy, which could be the defendant himself, would commit at least

Continued . . .

13

court also instructed the jury that the verdict had to be "unanimous as to which type or types of predicate racketeering activity the defendant agreed would be committed." Id. On appeal, the defendants argued that the district court erred by not instructing the jury that it must agree unanimously on the predicate acts that formed the basis of the RICO conspiracy. Id. But the Second Circuit disagreed and concluded that "the district court's instruction was sufficient in requiring unanimity as to the types of predicate racketeering acts that the defendants agreed to commit without requiring a finding of specific predicate acts." Id. at 82.

Until this point, the Tenth Circuit has not addressed the question of whether a jury must agree unanimously on the specific predicate acts the defendant agreed to in order to

_____

Cont.

> two predicate racketeering acts in the conduct of the affairs of the enterprise.
>
> In addition, the indictment need not specify the predicate acts that the defendant agreed would be committed by some member of the conspiracy in the conduct of the affairs of the enterprise. You may consider the evidence presented of racketeering acts committed or agreed to be committed by any co-conspirator in furtherance of the enterprise's affairs to determine whether the defendant agreed that at least one member of the conspiracy would commit two or more racketeering acts.
>
> Now, moreover, in order to convict the defendant of the RICO conspiracy offense, your verdict must be unanimous as to which type or types of predicate racketeering activity the defendant agreed would be committed; for example, at least two acts of murder, attempted murder, or drug trafficking, or one of each, or any combination thereof.

637 F.3d at 80.

14

convict the defendant of a RICO conspiracy under 18 U.S.C. § 1962(d). In light of the unsettled state of the law on this issue in our circuit, even if there was error in the district court's instruction, it was not plain. See Duran, 133 F.3d at 1330. Further, we now join the circuits discussed above in concluding that for a charge of RICO conspiracy, a jury need only be unanimous as to the types of predicate racketeering acts that the defendant agreed to commit, not to the specific predicate acts themselves. Thus, the district court did not plainly err by failing to instruct the jury that it had to agree unanimously on the predicate acts that Randall agreed to in order to sustain a conviction for conspiracy to commit a RICO violation.

### C. Cumulative Error

Finally, we must address whether the cumulative effect of these alleged instructional errors deprived Randall of a fair trial. "A cumulative-error analysis aggregates all errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." United States v. Barrett, 496 F.3d 1079, 1121 (10th Cir. 2007) (internal quotation marks omitted). This Court "considers whether the defendant's substantial rights were affected by the cumulative effect of the harmless errors." United States v. Toles, 297 F.3d 959, 972 (10th Cir. 2002). "Only actual errors are considered in determining whether the defendant's right to a fair trial was violated." Id. Randall failed to establish the existence of a single non-reversible error, let alone two or more non-reversible errors. Therefore, Randall was not deprived of a fair trial.

15

## III. CONCLUSION

For the foregoing reasons, we AFFIRM Randall's conviction for conspiracy to commit a RICO violation.