PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

v.

ANTWAN LAMAR JACKSON, a/k/a
Twan, a/k/a Mey-Mey,

        *Defendant-Appellant.*

No. 11-4858

Appeal from the United States District Court
for the Western District of Virginia, at Charlottesville.
Norman K. Moon, Senior District Judge.
(3:10-cr-00033-NKM-1)

Argued: December 7, 2012

Decided: January 18, 2013

Before WILKINSON, AGEE, and KEENAN,
Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Agee and Judge Keenan joined.

**COUNSEL**

**ARGUED:** Krysia Carmel Nelson, LAW OFFICES OF KRYSIA CARMEL NELSON, PLC, Keswick, Virginia, for Appellant. Jean Barrett Hudson, OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville, Virginia, for Appellee. **ON BRIEF:** Timothy J. Heaphy, United States Attorney, Sarah E. Childress, Third Year Law Intern, OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville, Virginia, for Appellee.

---

**OPINION**

WILKINSON, Circuit Judge:

Appellant Antwan Jackson was convicted of murder and various drug and firearm offenses in connection with a drug distribution conspiracy in the Western District of Virginia. At trial, Jackson unsuccessfully opposed the introduction of an incriminating statement made by the murder victim, Johnell Greene. On appeal, Jackson argues that the forfeiture-by-wrongdoing exception to the Confrontation Clause, upon which the district court relied in admitting Greene's statement, does not apply unless a criminal defendant's *sole* motivation in making a witness unavailable was to prevent that witness's testimony. We hold, however, that so long as a defendant intends to prevent a witness from testifying, the forfeiture-by-wrongdoing exception applies even if the defendant also had other motivations for harming the witness. We therefore affirm the judgment of the district court.

I.

A.

In early 2006, state and federal law enforcement officials began undercover operations targeting a drug distribution net-

work at the Lindsay Drive apartment complex in Orange, Virginia. On March 24, 2006, undercover agents at Lindsay Drive purchased controlled substances directly from Antwan Jackson, the self-styled "King of Orange" and leader of the drug ring. Less than three months later, Lindsay Drive resident Johnell Greene stole drugs and money from Garian "Boo" Washington, one of Jackson's associates. Greene was known around Lindsay Drive for distributing fake drugs, which are reported to "slow the business down" for actual drug sales by discouraging would-be buyers from frequenting an area. J.A. 77-78.

After learning of the robbery, Jackson and Washington confronted Greene. Jackson demanded that Washington "handle" Greene and punish him for the robbery. Washington fired a single gunshot at Greene but missed, and Greene fled the scene unharmed. While in custody on unrelated charges, Greene cooperated with police in investigating the attempted murder, implicating both Jackson and Washington. Washington was eventually arrested, and while he was incarcerated, he advised Jackson that Greene was "telling everything" to the authorities. J.A. 239.

On August 11, 2006, shortly after his release from jail, Greene returned to the Lindsay Drive complex. That night, he was attacked in a parking lot by a masked assailant and died from multiple gunshot wounds. When asked about Greene's death by another member of the Lindsay Drive operation, Jackson stated that Greene "was an informant trying to bring down him [Jackson] and his brothers" and that Greene "deserved" to be killed. J.A. 816.

Around the time of Greene's murder, other law enforcement officials were investigating a different drug operation in Staunton, Virginia. In August and September 2006, undercover agents in Staunton purchased controlled substances from three individuals—Tyrone Scott, Kurt Johnson, and Samuel Venable—after witnessing some of them receive

drugs from Jackson. Jackson was not a primary drug supplier in Staunton, and the street-level dealers there generally contacted him to obtain drugs when their regular suppliers were unavailable.

### B.

In early 2007, four men involved in the Staunton drug operation—Jackson, Scott, Johnson, and Venable—were indicted on various charges for crack cocaine sales that took place in August and September 2006. Jackson pleaded guilty to a single lesser included charge and was sentenced to 108 months' imprisonment, later reduced to 87 months' imprisonment.

While in prison, Jackson was indicted for the murder of Johnell Greene, for various drug and firearm offenses that took place in 2005 and 2006, and for persuading his associates to provide a false alibi to law enforcement during the investigation into Greene's death. Jackson pleaded not guilty and was tried before a jury in the Western District of Virginia.

Before trial, the United States filed a motion *in limine* to admit Greene's written statement to police describing Jackson's involvement in the attempt on his life. The government argued that "Jackson has waived his right to confront any of Greene's out-of-court statements by killing Greene with the intent, at least in part, of securing his unavailability as a witness." J.A. 20. In response, Jackson argued that the court should "reject the suggestions . . . that it is sufficient for the Government to show that the defendant intended 'in part' to procure the declarant's unavailability," because Supreme Court precedent mandates that "the intent required to be proven must be unqualified" in order to trigger the forfeiture-by-wrongdoing exception to the Confrontation Clause. J.A. 29B (citing *Giles v. California*, 554 U.S. 353, 359 (2008)).

The district court found that Jackson's desire to silence Greene was a "precipitating" and "substantial reason" for the

murder and concluded that any other motives for killing Greene did not preclude application of the forfeiture-by-wrongdoing exception. J.A. 845. The court thus granted the government's motion to admit Greene's statement.

The jury found Jackson guilty on all counts charged, and he was sentenced to life in prison. Jackson now appeals.

## II.

The Confrontation Clause guarantees that a criminal defendant will have the opportunity "to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, the Supreme Court held that the Clause bars admission of testimonial hearsay unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination. 541 U.S. 36, 68 (2004). Four years later, in *Giles v. California*, the Court made clear that a defendant's confrontation rights are subject to the forfeiture-by-wrongdoing exception, a common law doctrine that allows the introduction of unconfronted testimonial statements "where the defendant ha[s] engaged in wrongful conduct designed to prevent a witness's testimony." 554 U.S. 353, 366 (2008). Such "wrongful conduct" includes but is not limited to murdering a witness. *See*, *e.g.*, *United States v. Carlson*, 547 F.2d 1346, 1358-59 (8th Cir. 1976) (intimidation); *State v. Mechling*, 633 S.E.2d 311, 326 (W. Va. 2006) (physical violence); *People v. Geraci*, 649 N.E.2d 817, 823-24 (N.Y. 1995) (bribery).

The district judge in this case admitted Greene's statement after making an explicit finding that Jackson's desire to prevent Greene from testifying was a "precipitating" and "substantial" reason why Jackson murdered Greene. J.A. 845. At oral argument, Jackson contended that the forfeiture-by-wrongdoing exception to the Confrontation Clause requires that a defendant make a witness unavailable with the *sole* motivation of preventing the witness from testifying. He

argued that while Federal Rule of Evidence 804(b)(6) may permit forfeiture even if a defendant has secondary motivations for murdering a witness, the Confrontation Clause sets a higher bar and permits forfeiture only when a defendant was motivated *exclusively* by a desire to silence a witness. Jackson argued that he had additional reasons for killing Greene, to wit, preventing Greene from harming the Lindsay Drive drug operation and exacting revenge on Greene for robbing Garian "Boo" Washington, and that the forfeiture-by-wrongdoing exception therefore did not apply.[1]

We find no support in controlling precedent for Jackson's restrictive view of the forfeiture-by-wrongdoing exception, and, in accord with several other courts that have addressed the issue, we decline to provide criminal defendants with an opportunity to avoid the exception by adducing some additional motive for their misconduct.

## A.

Nothing in relevant Supreme Court or Fourth Circuit precedent substantiates Jackson's position. In *Crawford*, the Supreme Court looked to English and early American criminal cases to conclude that the Confrontation Clause bars admission of testimonial hearsay unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination. 541 U.S. at 68. However, the Court noted that its holding did not eliminate the common law forfeiture-by-wrongdoing exception, which "extinguishes confrontation claims on essentially equitable grounds" and permits testimonial hearsay even without an opportunity for cross-

---

[1]Although Jackson clearly raised his "mixed motives" argument in his motion *in limine*, he did not include the argument in his brief to this court, offering simply a general statement that the forfeiture-by-wrongdoing exception is "inapplicable and is not an exception to the Confrontation Clause." Appellant's Br. at 39. Counsel for Jackson clearly raised the contention once again at oral argument, however, and we shall exercise our discretion to consider it. *See Singleton v. Wulff*, 428 U.S. 106, 121 (1976).

examination. *Id.* at 62 (citing *Reynolds v. United States*, 98 U.S. 145, 158-59 (1879)). *Crawford* also left intact Federal Rule of Evidence 804(b)(6), the analogous exception to the evidentiary hearsay rule that allows admission of a "statement offered against a party that wrongfully caused—or acquiesced in wrongfully causing—the declarant's unavailability as a witness, and did so intending that result." Fed. R. Evid. 804(b)(6). The Court said nothing, however, about whether a party must intend *only* that result in order for the exception to apply.

The Supreme Court revisited the forfeiture-by-wrongdoing exception in *Giles*, concluding that it applies only "when the defendant engaged in conduct *designed* to prevent the witness from testifying." 554 U.S. at 359. The Court noted that the exception is based on the maxim "that no one should be permitted to take advantage of his wrong" and emphasized that "'[t]he Constitution does not guarantee an accused person against the legitimate consequences of his own wrongful acts.'" *Id.* at 366 (quoting *Reynolds*, 98 U.S. at 158).

In *Giles*, the defendant murdered the declarant, and the state court applied the forfeiture-by-wrongdoing exception without considering the defendant's motivation for committing the murder. *Id.* at 377. The Supreme Court vacated, directing the state court to consider the defendant's intent on remand, *id.*, and to apply the exception only if the defendant's conduct was "*designed* to prevent the witness from testifying," *id.* at 359. The Court made no mention of any requirement that the defendant's desire to silence the witness be the sole or primary motivation for his misconduct. As we recently noted in *United States v. Dinkins*, the *Giles* decision "did not materially alter application of the forfeiture-by-wrongdoing exception" but merely clarified existing precedent and affirmed that the intent requirement of Rule 804(b)(6) is sufficient to prevent any violation of the Confrontation Clause. 691 F.3d 358, 383 (4th Cir. 2012).

In *Dinkins*, this court endorsed a broad understanding of the forfeiture-by-wrongdoing exception, concluding that the exception applies to a defendant whose co-conspirators murdered a declarant intending to prevent him from testifying. *Id.* at 384. Acting in accord with our sister circuits, we held that the principles of conspiratorial liability articulated in *Pinkerton v. United States*, 328 U.S. 640 (1946), essentially imputed the co-conspirators' intent to the defendant for purposes of both Rule 804(b)(6) and the Confrontation Clause. *Dinkins*, 691 F.3d at 384, 386. In light of *Pinkerton* liability, this was wholly consistent with the Supreme Court's statement that "[t]he Constitution does not guarantee an accused person against the legitimate consequences of his own wrongful acts." *Reynolds*, 98 U.S. at 158. Thus, far from supporting Jackson's narrow view of the forfeiture-by-wrongdoing exception, *Dinkins* suggests a broad understanding of the doctrine.

### B.

Not only does Jackson's argument find no support in *Crawford*, *Giles*, or this court's precedents, it finds no support in the functional needs of our criminal justice system. Accepting Jackson's view would play roulette with the safety of cooperating witnesses, who often face immense stress and danger when testifying against co-conspirators and other criminal defendants. Armed with multiple motives for their actions, defendants might be tempted to murder, injure, or intimidate witnesses before trial and then invoke their constitutional right to confrontation to ensure that those witnesses' statements are never heard in court. Such an outcome would be fundamentally at odds with the axiom that "no one should be permitted to take advantage of his wrong," *Giles*, 554 U.S. at 366.

Eroding the forfeiture-by-wrongdoing exception risks not only giving defendants "an intolerable incentive" to "bribe, intimidate, or even kill witnesses against them." *Id.* at 365. It

also provides a disincentive for witnesses themselves to come forward and testify. While the Confrontation Clause is fundamental to our conception of a fair and just system of criminal adjudication, so also is the vigorous and candid participation of relevant witnesses. Accepting Jackson's proposition would throw the system off kilter by hindering factual development in criminal prosecutions. That, too, would prevent the adversarial process from playing out as the Framers intended.

Our decision to construe the forfeiture-by-wrongdoing exception to apply even when a defendant has multiple motivations for harming a witness places us in accord with our sister circuits and with several state courts. For instance, the First Circuit has explicitly stated that "it is sufficient in this regard to show that the evildoer was motivated *in part* by a desire to silence the witness; the intent to deprive the prosecution of testimony need not be the actor's *sole* motivation." *United States v. Houlihan*, 92 F.3d 1271, 1279 (1st Cir. 1996) (emphasis in original). And in a post-*Crawford* decision, the D.C. Circuit concluded that imposing an exclusive-intent requirement would have the "perverse consequence" of "allowing criminals to murder informants and thereby prevent admission of the informants' statements—just so long as the criminal could show that the intent was retaliation (which the criminal almost always could do)." *United States v. Martinez*, 476 F.3d 961, 966 (D.C. Cir. 2007); *see also*, *e.g.*, *People v. Banos*, 100 Cal. Rptr. 3d 476, 493 (Cal. Ct. App. 2009) ("It strikes us as illogical and inconsistent with the equitable nature of the [forfeiture-by-wrongdoing exception] to hold that a defendant who otherwise would forfeit confrontation rights by his wrongdoing (intent to dissuade a witness) suddenly regains those confrontation rights if he can demonstrate another evil motive for his conduct."), *cert. denied*, 130 S. Ct. 3289 (2010).

C.

The district court in this case made an explicit finding that preventing Greene from testifying was a "precipitating" and "substantial" reason why Jackson murdered him. J.A. 845. There is ample support in the record for this finding, as Jackson told others that Greene "was an informant trying to bring down him [Jackson] and his brothers" and that Greene "deserved" to be killed. J.A. 816. While it may be true that Greene was in some general sense bad for business or the target of retribution for robbing Garian "Boo" Washington, Greene's murder was set up within a very short time after Jackson learned that he was out of jail as an apparent reward for his cooperation with law enforcement. We conclude that, under *Giles*, the district court's finding was sufficient to permit the admission of Greene's statement pursuant to the forfeiture-by-wrongdoing exception to the Confrontation Clause.[2]

---

[2]Jackson also argues for the first time on appeal that his second conviction violates the Double Jeopardy Clause of the Fifth Amendment because the Staunton and Lindsay Drive operations were a single conspiracy. Applying the familiar plain error standard, *see United States v. Olano*, 507 U.S. 725, 732-36 (1993), we reject Jackson's double jeopardy argument. The record reveals that the district court did not commit plain error in finding two conspiracies rather than one, *see United States v. Ragins*, 840 F.2d 1184, 1188-89 (4th Cir. 1988). First, the two operations involved different individuals. The Staunton indictment charged Jackson, Scott, Venable, and Johnson, while the Lindsay Drive indictment charged only Jackson and one other individual, Jeffrey Deane. And only one of the numerous unindicted members of the Lindsay Drive conspiracy played a significant role in the Staunton conspiracy. Second, the two operations were conducted in different locations. The Lindsay Drive conspiracy was confined to a single apartment complex in Orange, while the Staunton conspiracy took place sixty-odd miles away. Finally, Jackson had a very different role in each of the two operations. At Lindsay Drive, he sat atop a hierarchy and used violence to eliminate any threats to his operation. In Staunton, he was merely a supplier, and he began selling drugs there only after the area's usual suppliers were unavailable. The district court did not commit plain error by allowing Jackson to be charged on the second indictment. That the court also issued a limiting instruction to assuage any potential double jeopardy concerns further supports our conclusion.

The judgment of the district court is therefore affirmed.

*AFFIRMED*