**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 18-4362**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

NANA YAW ADOMA, a/k/a Ratchet,

Defendant - Appellant.

---

**No. 18-4364**

---

UNITED STATES OF AMERICA,

Plaintiff -Appellee,

v.

RANDALL AVERY HANKINS, II, a/k/a Foe,

Defendant - Appellant.

---

**No. 18-4382**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

AHKEEM TAHJA MCDONALD, a/k/a Lil Keem, a/k/a Savage,

Defendant - Appellant.

_____

Appeals from the United States District Court for the Western District of North Carolina, at Charlotte. Max O. Cogburn, Jr., District Judge. (3:14-cr-00229-MOC-DCK-2; 3:14-cr-00229-MOC-DCK-5; 3:14-cr-00229-MOC-DCK-11)

_____

Submitted: July 19, 2019                                    Decided: July 30, 2019

_____

Before GREGORY, Chief Judge, FLOYD, Circuit Judge, and HAMILTON, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

Leslie Carter Rawls, Charlotte, North Carolina; Joshua B. Howard, GAMMON, HOWARD & ZESZOTARSKI, Raleigh, North Carolina; Mark P. Foster, Jr., FOSTER LAW OFFICES, PLLC, Charlotte, North Carolina; Reggie E. McKnight, MCKNIGHT LAW FIRM, LLC, Charlotte, North Carolina; Sean Paul Vitrano, VITRANO LAW OFFICES, PLLC, Wake Forest, North Carolina, for Appellants. William T. Stetzer, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina; Don Gast, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Nana Yaw Adoma, Ahkeem Tahja McDonald, and Randall Avery Hankins, II, appeal from their convictions for various offenses related to the racketeering activities of United Blood Nation, a confederation of individual gangs. The jury returned guilty verdicts as to all counts. Specifically, Count One alleged a RICO conspiracy, 18 U.S.C. § 1962(d), that included all three defendants. Count Two charged Adoma and McDonald with the murder of Kwamne Donquirius Clyburn in aid of racketeering, 18 U.S.C. § 1959(a)(1). Count Three alleged that that Adoma and McDonald used firearms during and in relation to Clyburn's murder, 18 U.S.C. § 924(c) and (j). Counts Four, Five, and Six charged Adoma with Hobbs Act robbery, assault with a dangerous weapon in aid of racketeering, and use of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 1951, 1959, and 924(c), respectively (the "mattress store robbery"). Counts Seven and Eight alleged that Hankins aided and abetted the murder of Deborah London in aid of racketeering and possessed a firearm in furtherance of that offense; and Counts Nine and Ten charged Hankins with the same offenses for the murder of Doug London. We affirm.

I.

Adoma and McDonald first allege that the district court erred in denying their motions to sever their trials because evidence of the London murders, with which neither was charged, was allegedly unfairly prejudicial. We review the denial of a motion to sever for an abuse of discretion. *United States v. Min*, 704 F.3d 314, 319 (4th Cir. 2013). "[T]he general rule is that defendants indicted together should be tried together," and this

principle holds particularly true in conspiracy cases. *United States v. Chorman*, 910 F.2d 102, 114 (4th Cir. 1990). A court may order a separate trial if it appears that a joint trial will prejudice the defendant, but even where the possibility of prejudice exists, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). "[A] district court should grant severance under [Fed. R. Crim. P.] 14 'only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *Min*, 704 F.3d at 319 (quoting *Zafiro*, 506 U.S. at 539).

Adoma and McDonald contend that photographs and other evidence of a horrendous and well-publicized double murder were unfairly prejudicial. However, all three Appellants were charged in the same RICO conspiracy count, the key element of which was that "each defendant knowingly and willfully agreed that he or some other member of the conspiracy would commit at least two racketeering acts." *United States v. Mouzone*, 687 F.3d 207, 218 (4th Cir. 2012) (emphasis added). This element renders the activities of co-conspirators relevant if those acts were made in furtherance of the enterprise, even if the defendants did not participate in (or even know the details of) every such act. *See United States v. Moussaoui*, 591 F.3d 263, 297 (4th Cir. 2010). "Because it is the agreement to commit the crime that creates the conspiracy, the defendant need not know the details of the underlying crime or the entire breadth of the criminal enterprise." *Id.* at 296-97. In fact, a defendant "may be liable for conspiracy

4

even though he was incapable of committing the substantive offense." *Salinas v. United States*, 522 U.S. 52, 64 (1997).

While Adoma and McDonald were not alleged to have engaged in the egregious murder of the Londons perpetrated by their co-defendants, that fact alone does not justify severing the trial. *See United States v. Dinkins*, 691 F.3d 358, 368 (4th Cir. 2012) (upholding denial of motion to sever where indictment included several murders in furtherance of the conspiracy not applicable to all defendants); *see also United States v. Chavez*, 894 F.3d 593, 605 (4th Cir. 2018) ("[E]ach defendant here was charged with involvement in at least one murder, so any prejudice stemming from dramatically different degrees of culpability was especially unlikely."), *cert. denied*, 139 S. Ct. 278 (2018). Evidence was admitted from which the jury could conclude that Adoma and McDonald knew that murders were and had been committed in furtherance of the enterprise for various reasons. Thus, the evidence of the London murders was relevant to show the acts committed by the conspiracy that Adoma and McDonald knowingly joined.

Moreover, even assuming error, Adoma and McDonald have not established that the failure to grant a severance affected the outcome of the trial. Evidence was indisputably properly admitted against both Adoma and McDonald showing that they participated in the murder of Clyburn in furtherance of the organization. Thus, evidence that other members of the gang murdered other people in furtherance of the organization was not likely to be surprising or shocking to the jury or difficult for the jury to segregate. Accordingly, Adoma and McDonald have failed to show that the district court abused its discretion in this regard. *See id.* at 605 (recognizing the "extent to which it would strain

judicial and community resources to provide each defendant a separate trial in every case," particularly when the primary focus of the trial is interwoven relationships among the defendants).

II.

Adoma challenges the district court's denial of his motion to suppress Doug London's recorded statement following the robbery of his mattress store and the officers' testimony regarding the show-up identification. Adoma asserts that admission of the recorded statement violated his Confrontation Clause rights. He further argues that the identification was unduly suggestive.

Starting with the admission of London's recorded statement, we review "a trial court's rulings on the admissibility of evidence for abuse of discretion, and [] will only overturn an evidentiary ruling that is arbitrary and irrational." *United States v. Cole*, 631 F.3d 146, 153 (4th Cir. 2011) (internal quotation marks omitted). Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Hearsay is generally inadmissible. Fed. R. Evid. 802.

However, under the forfeiture-by-wrongdoing exception, hearsay statements are admissible where the declarant is unavailable to testify because the party against whom the statements are offered wrongfully caused the declarant's unavailability and did so intending that result. Fed. R. Evid. 804(b)(6). "Such wrongful conduct includes but is not limited to murdering a witness." *United States v. Jackson*, 706 F.3d 264, 267 (4th Cir. 2013) (internal quotation marks and citations omitted). In order for the exception to

6

apply, the desire to keep the witness from testifying must be a reason for procuring the unavailability of the declarant, but not necessarily the only motivation. *Id.* The Government contends that the murder of London renders the hearsay admissible.

While it is undisputed that Adoma did not, personally, participate in the murder of London, we held, in *Dinkins*, that the forfeiture-by-wrongdoing exception can apply where defendant's coconspirators, rather than the defendant himself, engaged in the wrongdoing which rendered the declarant unavailable. 691 F.3d at 384. The *Dinkins* court found that the murder of the witness was reasonably foreseeable to Dinkins and that Dinkins' gang had a pattern of intimidation and violence with respect to informants. The court thus ruled that the disputed hearsay statements were admissible. *Id.* at 386; *see also Jackson*, 706 F.3d at 268-69 (holding that forfeiture-by-wrongdoing exception should be construed broadly because otherwise defendants would have an "intolerable incentive" to bribe, intimidate or harm witnesses).

Here, Adoma recognizes the holding in *Dinkins*, but argues that London's murder was not reasonably foreseeable to him. However, we conclude that the district court properly found it was reasonably foreseeable to Adoma that the gang might take action to murder London, even if Adoma did not participate directly. Adoma had already murdered Clyburn on behalf of the gang for merely pretending to be a gang member. Further, many cooperating witnesses testified that killing for the gang was not just foreseeable, but required. The trial evidence also established that Jamell Cureton (Adoma's accomplice for the mattress store robbery) and Adoma were communicating and colluding with each other while they were in pre-trial custody. Specifically, Cureton

7

and Adoma attempted to obstruct justice by creating a false narrative about the robbery. Thus, not only were the gang's activities reasonably foreseeable to Adoma, he likely knew that the gang was working on behalf of Cureton and himself to silence London. As such, the district court's decision to admit London's statement was not arbitrary or irrational.

Turning to the show-up identification, the defendant bears the burden of proof in challenging the admissibility of an out-of-court identification. *See United States v. Johnson*, 114 F.3d 435, 441 (4th Cir. 1997). "First, the defendant must show that the . . . identification procedure was impermissibly suggestive." *United States v. Saunders*, 501 F.3d 384, 389 (4th Cir. 2007). If the procedure was improper, the court must "consider[] whether the identification was nevertheless reliable in the context of all of the circumstances." *Id.* at 389-90.

Prompt, on the scene show-ups are not per se suggestive and may in fact "promote fairness, by enhancing reliability of the identifications, and permit expeditious release of innocent subjects." *Willis v. Garrison*, 624 F.2d 491, 494 (4th Cir. 1980). While "[g]reater accuracy can be assured when a suspect is exhibited to a witness in the company of others having similar facial and physical characteristics under circumstances where the mind of the beholder is not affected by intended or unintended, blatant or subtle, suggestions of the suspect's probable guilt," one-man confrontations are not impermissibly suggestive when they occur promptly after the commission of a crime, the police have obtained a good description of the offender, and the show-up is completed under circumstances where it is important to continue the search for the real culprit

8

promptly if he has not been apprehended. *Smith v. Coiner*, 473 F.2d 877, 880-81 (4th Cir. 1973); *see also Stanley v. Cox*, 486 F.2d 48, 51 n.7 (4th Cir. 1973) (citing precedent for the proposition that a one-man show-up identification is not impermissibly suggestive when it occurs near the time of the alleged criminal act).

We find that, under the circumstances, the police show-up did not violate Adoma's due process rights. Here, prompt identification was warranted in light of the fact that the robbery had just happened and London's memory was fresh. Moreover, although Adoma and David Fudge, the getaway driver, were detained at the time of the show-up, the officer made clear to London that the two individuals officers would show him may or may not have been involved in the robbery. London was shown two subjects (Adoma and Fudge) and only identified Adoma (because Fudge remained in the getaway car). Further, because officers were investigating an armed robbery during which one of the robbers fired shots at the victim, a show-up was important to search for the real culprit promptly. Because Adoma has failed to carry his burden of proving that the identification procedure was unduly suggestive, we affirm the admission of London's identification of Adoma.

III.

A statement is not hearsay if it is offered against the defendant and is a statement by a co-conspirator of the defendant made during the course of and in furtherance of the conspiracy. Fed. R. Evid. 801(d)(2)(E). We have determined that "[i]dle conversation that touches on, but does not further, the purposes of the conspiracy does not constitute a

9

statement in furtherance of a conspiracy under Rule 801(d)(2)(E)." *United States v. Pratt*, 239 F.3d 640, 643 (4th Cir. 2001).

Appellants first challenge hearsay statements by Cureton. Fudge and two prisoners who spoke with Cureton in jail testified that Cureton told them details of Clyburn's murder. Appellants contend that Cureton's disclosure of information regarding Clyburn did not further the conspiracy but rather exposed it to risk of prosecution by disclosing a murder. As such, they argue that the statements should not have been admitted.

However, we find that these statements were, in fact, in furtherance of the conspiracy. Witnesses explained that UBN members brag to each other about crimes they committed in order to move up the ranks or recruit other members. While serving time in custody together, Cureton discussed with other prisoners, one of which was a member of UBN and one of which he was attempting to recruit, how he "ran his line," and gave the example of killing Clyburn because he was not truly a Blood. Similarly, his conversations with Fudge must be viewed in the context of the other testimony regarding gang procedures and membership. Because this sort of bragging is how gang members gain reputation, rank, and new members, such discussions about the operations of the gang further the conspiracy by enhancing the reputations of Cureton's "set" and the individual gang members involved in the crimes. The evidence also showed that Bloods were encouraged not to hide things from each other, due to the requirements of loyalty and the necessity of creating a family bond.

10

All of Cureton's statements to these three witnesses were made during the conspiracy and could reasonably be interpreted "as encouraging a co-conspirator or other person to advance the conspiracy, or as enhancing a co-conspirator or other person's usefulness to the conspiracy." *United States v. Carson*, 455 F.3d 336, 366–67 (D.C. Cir. 2006) (noting that statements updating the "status of the business," motivating "continued participation," or providing background information on key members is not idle chatter). Thus, the district court acted well within its discretion when it admitted these statements about Cureton's out-of-court statements.

Next, Hankins and McDonald challenge the admission of Adoma's out-of-court statements regarding Clyburn's murder. For the reasons discussed above, the district court also reasonably concluded that Adoma's statements were made in furtherance of the conspiracy. Thus, there was no error in the admission of these statements.

IV.

Hankins contends that the district court erred in limiting his cross-examination of Ibn Korengay. Specifically, counsel sought to elicit testimony that Korengay lied to the Government during his proffer when he told them that he had first been "arrested at the age of 24", when in fact he had been arrested earlier although not convicted. The district court ruled that counsel was improperly attempting to admit evidence of prior criminal conduct in violation of Fed. R. Evid. 609. (J.A. 2797-801). Hankins argues on appeal that the district court erred because he sought only to show that Korengay lied to the Government and the jury about when he was first arrested. (J.A. 2797-99).

11

Hankins also sought to impeach Korengay's statement that his wife never had anything to do with the Bloods. After admitting that his plea agreement provided that his wife would not be charged, Korengay said, "She got nothing to do with nothing, sir." Hankins then sought to elicit testimony that Korengay's wife actually took over the gang when Korengay went to prison. The Government objected, and the district court sustained the objection on grounds of relevance. On appeal, Hankins contends that the question was proper impeachment.

Evidentiary rulings are reviewed for harmless error and will not be reversed so long as we can "say with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *United States v. Cloud*, 680 F.3d 396, 401 (4th Cir. 2012) (internal quotation marks omitted). We find that any error in this case was clearly harmless. Counsel for Hankins engaged in an extensive cross-examination of Korengay that covered a variety of topics. Through the lengthy cross-examination, the jury learned ample facts about Kornegay that bore on his credibility. *See United States v. Kelly*, 510 F.3d 433, 439 (4th Cir. 2007) (finding the exclusion of a witness's criminal conviction harmless because the defense "thoroughly attacked [the witness's] credibility on a variety of other grounds"). Further, several other gang members also testified and corroborated much of Kornegay's testimony. Because the jury would not have been swayed by further impeachment, any error in this regard was harmless.

V.

Hankins and McDonald contend that the record lacks sufficient evidence for their convictions. We review a district court's denial of a Fed. R. Crim. P. 29 motion for judgment of acquittal de novo. *United States v. Jaensch*, 665 F.3d 83, 93 (4th Cir. 2011). Where, as here, the Rule 29 motion challenges the sufficiency of evidence, we must sustain the jury verdict if "there is substantial evidence in the record, when viewed in the light most favorable to the government, to support the conviction." *Id.* (internal quotation marks omitted). "Substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *Id.* (brackets and internal quotation marks omitted).

In order to prove that McDonald and Hankins committed the RICO conspiracy offense, the Government was required to prove that (1) an enterprise affecting interstate commerce existed; (2) each defendant knowingly and intentionally agreed with another person to conduct or participate in the affairs of the enterprise; and (3) each defendant knowingly and willfully agreed that he or some other member of the conspiracy would commit at least two racketeering acts. *United States v. Cornell*, 780 F.3d 616, 621 (4th Cir. 2015). McDonald and Hankins only contest the third element—whether the jury heard sufficient evidence that "each defendant knowingly and willfully agreed that he or some other member of the conspiracy would commit at least two racketeering acts." *Mouzone*, 687 F.3d at 218 (emphasis added). By statute, racketeering activity includes, but is not limited to, "any act or threat involving murder, kidnapping, . . . robbery,

13

bribery, extortion, . . . or dealing in a controlled substance . . . , which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1).

As the Supreme Court has explained, unlike a traditional conspiracy, a RICO conspiracy contains "no requirement of some overt act or specific act." *Salinas,* 522 U.S. at 63. Thus, to secure a conviction for racketeering conspiracy, the Government is not required to prove, or even allege, the actual completion of or agreement to perform any particular racketeering act by the defendant or any other member of the conspiracy. *Cornell*, 780 F.3d at 624. The Government may identify and allege the types of crimes that constitute the pattern of racketeering activity, without alleging specific racketeering acts at all. *United States v. Glecier*, 923 F.2d 496, 500 (7th Cir. 1991). The Government does not need to prove specific "racketeering acts," but instead only needs to prove that each defendant agreed that he or a co-conspirator would commit at least two acts of racketeering activity of the type alleged in the indictment, or any combination thereof. *Cornell*, 780 F.3d at 624 ("The partners in the criminal plan need only agree to pursue the same criminal objective, regardless of whether that criminal objective is ever started or carried out."). A defendant can agree to a pattern of racketeering activity without committing or agreeing to commit any predicate acts himself. *See, e.g., Salinas*, 522 U.S. at 66; *see also United States v. Delgado*, 401 F.3d 290, 296 (5th Cir. 2005) (holding that the conspirator need not have committed or agreed to commit the two predicate acts and instead need only have known of and agreed to the overall objective of the RICO offense). However, when a defendant does commit predicate acts, that is sufficient proof that he agreed to commit them. *United States v. Lawson*, 535 F.3d 434, 445 (6th Cir.

14

2008). Thus, Hankins' and McDonald's arguments that the evidence was insufficient to establish that a particular defendant committed a particular racketeering act are without merit.

Moreover, the jury heard abundant evidence that McDonald and Hankins knew that UBN engaged in racketeering activities and, thus, their decision to join UBN constituted agreement. Several members of UBN testified that the gang actively engaged in racketeering activities and that, in fact, these activities were required to join and gain rank. In addition, the Government presented evidence at trial that McDonald, Hankins, and other Bloods participated directly in racketeering activity. The jury heard evidence that members of UBN committed murder, assaults, obstruction of justice, robbery, and distribution of drugs, and that they regularly discussed their crimes with each other. Further, the Government presented evidence at trial from which the jury could reasonably conclude that new initiates into the gang knew that they were joining an enterprise engaged in racketeering activities and that members of the enterprise would engage in a pattern of racketeering. Accordingly, the district court properly denied Hankins' and McDonald's motions for judgments of acquittal on the RICO conspiracy count.

Next, McDonald challenges the denial of his motion for a judgment of acquittal on his offenses related to Clyburn's murder. However, the jury heard ample evidence that McDonald participated in that murder. Specifically, McDonald was present at a meeting called by Cureton, during which the gang voted and agreed to murder Clyburn for his breach of gang protocol. Fudge testified that Cureton, Adoma, McDonald, and Clyburn left together, and minutes later Fudge heard gunshots in the park. Fudge went to the

15

source of the sound and found Clyburn dead. Following the murder, Cureton, Adoma, and McDonald all admitted the crime to Fudge, with Cureton also implicating McDonald. Portions of Fudge's testimony was corroborated by other coconspirators, as well as relevant letters and the discovery of one of the murder weapons.

The jury considered the trial testimony and reasonably concluded that McDonald was guilty of participating in Clyburn's murder, apparently resolving any credibility issues in the Government's favor. Credibility challenges, standing alone, cannot support a motion for a post-verdict judgment of acquittal, and therefore, the district court correctly denied McDonald's motion for acquittal. *See United States v. Hobbs*, 136 F.3d 384, 391 n.11 (4th Cir. 1998) (further noting that "the uncorroborated testimony of an accomplice is sufficient to support a guilty verdict").

Finally, Hankins challenges the denial of his motion for judgment of acquittal on the charges related to the London murders. However, the jury heard evidence that Hankins' participation in the London murders began shortly after the mattress store robbery. Hankins participated directly in a jail phone call with Cureton about killing Doug London. Hankins told Cureton that he got the plan "green lighted" when he made a trip to see Kornegay in Greenville. Hankins thereafter attended gang meetings during which they discussed the murder plan. On the night of the murders, Hankins produced the gun for the shooter and also gave the shooter some blue latex gloves and a plastic shopping bag to catch shell casings. Sometime after the murders, Hankins called Kornegay to request a promotion in rank like the other participants received.

16

While Hankins asserts that he withdrew from the conspiracy prior to the murders, by the night of the murders, Hankins had clearly overcome any reservations that existed. Moreover, a defendant bears the burden of proving that he withdrew from a conspiracy, and he must withdraw from the conspiracy entirely—"mere cessation of activity in furtherance of the conspiracy is insufficient." *United States v. Walker*, 796 F.2d 43, 49 (4th Cir. 1986). There was no evidence that Hankins ever contemplated, much less announced, his withdrawal from UBN.

The jury heard more than sufficient evidence to support the conclusion that Hankins aided and abetted the London murders and, as the gang member who handed the shooter the gun with which he would murder the Londons, possessed a firearm in furtherance of the murders. Accordingly, the district court correctly denied Hankins' motion.

As such, we affirm Appellants' convictions. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*