*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————

**UNITED STATES**
Appellee

**v.**

**Craig R. BECKER, Lieutenant**
United States Navy, Appellant

**No. 21-0236**
Crim. App. No. 201900342

Argued May 25, 2021—Decided September 14, 2021

Military Judge: Aaron C. Rugh

For Appellant: *Captain Marcus N. Fulton,* JAGC, USN (argued); *Lieutenant Daniel Moore,* JAGC, USN.

For Appellee: *Major Kerry E. Friedewald,* USMC (argued); *Lieutenant Colonel Nicholas L. Gannon*, USMC, *Major Clayton L. Wiggins*, USMC, and *Brian K. Keller*, Esq.

Judge SPARKS delivered the opinion of the Court, in which Chief Judge OHLSON, Judge MAGGS and Judge HARDY, and Senior Judge STUCKY, joined.

———————

Judge SPARKS delivered the opinion of the Court.

In this Article 62, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 862 (2018), case, the Government charged Appellant at a general court-martial with one specification of premeditated murder, two specifications of assault consummated by a battery, and three specifications of conduct unbecoming an officer and a gentleman in violation of Articles 118, 128, and 133, UCMJ, 10 U.S.C. §§ 918, 928, 933 (2012), for allegedly strangling his wife, Mrs. Becker, in August 2013, physically and emotionally abusing her over the following two years, and then drugging her and causing her to fall from a seventh-floor apartment window to her death in October 2015. *United States v. Becker*, 81 M.J. 525, 527–28 (N-M. Ct. Crim. App. 2021). As explained in detail below, the Government pursued the admission of prior statements by the decedent, Mrs. Becker, under the forfeiture by wrongdoing exception to the Sixth Amendment Confrontation Clause and the hearsay rule. *Id.* at 527. The military judge

ruled some of these statements inadmissible concluding that the Government failed to meet its burden to demonstrate that the accused had waived his right to confrontation by wrongdoing or had forfeited his hearsay objections under Military Rule of Evidence (M.R.E) 804(b)(6) because the preponderance of the evidence failed to show that the accused intended to prevent Mrs. Becker's testimony by causing her death in October 2015. Ultimately, the lower court reversed the military judge's ruling. *Becker*, 81 M.J. at 535. We granted review to determine whether the Court of Criminal Appeals engaged in impermissible factfinding beyond the scope of Article 62, UCMJ, review.[1] We hold that the lower court did engage in improper factfinding and the military judge did not abuse his discretion in ruling the statements inadmissible. Accordingly, the decision of the lower court is reversed.

## I. Background

The United States Navy-Marine Corps Court of Criminal Appeals succinctly summarized the relevant facts surrounding the relationship between Appellant and Mrs. Becker, including the night of her death, as follows:

> The pending charges arise from the troubled relationship of [Appellant] and Mrs. Becker, whom [Appellant] allegedly murdered by pushing her from their apartment's seventh-story window in Mons, Belgium, in October 2015. Two years earlier, in August 2013, after learning of his wife's infidelity, [Appellant] allegedly threw her around their hotel room and strangled her. Mrs. Becker reported the alleged abuse to several individuals, including the desk clerk at the Army Lodge where they were staying and a military police officer who responded to the scene. Later that day, she made follow-up statements and a formal report to law enforcement. She alleged that in addition to physically assaulting her, [Appellant] had taken her identification and credit cards and changed their bank account

---

[1] We granted review of the following issue: "Whether the lower court erred in its abuse of discretion analysis by failing to give the trial judge's findings of fact deference, substituting its own discretion for the military judge's, and engaging in fact-finding beyond the scope of Article 62 review."

passwords, effectively leaving her isolated and trapped.

That evening, after attending counseling with [Appellant], Mrs. Becker recanted her allegations. She denied [Appellant] had taken her identification and credit cards and later formally recanted her report to law enforcement, explaining that [Appellant] had not strangled her and instead was trying to keep her from harming herself. She blamed her report on the effects of her medication. After Mrs. Becker's recantation, the criminal investigation stopped, and all further action on her allegations was formally closed in June 2014.

Despite her recantation to authorities, Mrs. Becker told a different story to friends and family members. She told them the allegations were true and that she had feared for her life during the assault, but that she recanted out of concern that they would negatively impact [Appellant's] career; she told one friend that she was afraid of what [Appellant] would do if he lost his career. She described how [Appellant] was controlling and manipulative and monitored her communications on her personal phone. She said he prevented her from contacting her friends and family while she was recovering from a surgery, and controlled who could visit her at their apartment in Belgium. She said he controlled how she could dress, prevented her from getting a tattoo, and destroyed her cosmetic products.

The discord within the Beckers' marriage culminated in their separation in the summer of 2015, after which Mrs. Becker decided to remain in Belgium, but live apart from [Appellant]. On the surface, the separation appeared amicable; the two intended to remain friends, to have regular interactions to raise their daughter, and to continue working in a joint business venture. But [Appellant] had a visceral reaction when he learned Mrs. Becker had a new boyfriend, with whom she worked, and she had begun spending nights at his home about a week before her death.

On the day Mrs. Becker died, she signed a lease and paid the deposit on an apartment of her own. That night, [Appellant] and Mrs. Becker had dinner at their seventh-floor apartment. Witnesses heard a

scream around 2100 and saw Mrs. Becker fall from the seventh floor to the ground. The Government alleges [Appellant] put a sedative in her wine and pushed her out of a window. She survived the initial fall, but died later at a Belgian hospital.

*United States v. Becker*, 80 M.J. 563, 565 (N-M. Ct. Crim. App. 2020) (per curiam).

Following Mrs. Becker's death, a toxicological exam revealed that although her blood alcohol content was negative at her time of death, zolpidem and a high level of tramadol were found in her blood system. According to the exam's findings, tramadol is a morphine-based drug used in the treatment of moderate to severe pain, whereas zolpidem is a sedative with undesirable side effects, including hallucinations and restlessness. A third medication, midazolam, was also found present in her system. This drug is typically reserved for hospital environments and used for anesthesia induction. Further, one of Appellant's work colleagues reported that a day or so before Mrs. Becker's death, Appellant had picked up a small bag of small, round, pink pills from his old office. *Becker*, 81 M.J. at 529.

In its pretrial motion, the Government argued that Mrs. Becker's statements were admissible without confrontation and over hearsay objection because Appellant wrongfully caused Mrs. Becker's unavailability when he allegedly caused her to fall from their apartment window in Belgium and did so with the intent to make her unavailable to testify against him. The Government argued Appellant killed Mrs. Becker with the intent, at least in part, of preventing her from repeating and expounding on her earlier abuse allegations against Appellant since it was reasonable to infer that a person who recanted prior allegations to save her spouse's career might again pursue them once their relationship ended. *Becker*, 80 M.J. at 565–66. In response, Appellant argued that any concern regarding whether Mrs. Becker would revive her earlier allegations against him was entirely speculative, particularly since their separation appeared to be proceeding amicably. *Id.* at 566. Appellant contended that Mrs. Becker appeared "upbeat regarding her post-separation life" and that she and Appellant had "made plans to continue working on a joint-venture business together" even after their

separation. Furthermore, even if a revival of her earlier allegations could be expected, this fact without more, did not weigh in favor of an inference that Appellant intended to silence Mrs. Becker as a witness because there were no pending charges against him, there was no ongoing investigation, and no indication an investigation would be opened against him in the future. Thus, according to the defense, it was not reasonably foreseeable that any investigation would culminate in the bringing of charges against Appellant. *Id.*

The military judge citing M.R.E. 804(b)(6) in light of *Giles v. California*, 554 U.S. 353, 367 (2008), ruled that the Government had failed to demonstrate that Appellant acted on the day of Mrs. Becker's death "in order to prevent Mrs. Becker's testimony." The military judge noted that "by October 9th, 2015, there were no active . . . and no anticipated investigations" of Appellant regarding Mrs. Becker's earlier allegations of Appellant's physical and emotional abuse. Further, "although Mrs. Becker raised the 2013 incident with friends and family on several occasions, she never expressed any disappointment that the original investigation had closed or a desire to see the accused further investigated." He ultimately agreed with the defense and concluded that it was not "reasonably foreseeable" that Appellant would be investigated regarding Mrs. Becker's prior allegations against him or that Appellant might face charges based on those allegations, such that Mrs. Becker might be required to testify against him.

The Government appealed pursuant to Article 62, UCMJ, and the lower court found that the military judge erred as a matter of law by adopting a "reasonable foreseeability" standard, thereby unnecessarily and erroneously narrowing the forfeiture by wrongdoing exception. *Becker*, 80 M.J. at 568. The lower court remanded the case for further consideration under the *Giles* rule, holding that the military judge erred in applying the pre-*Giles* "reasonable foreseeability" test to determine the admissibility of Mrs. Becker's statements because that standard "stray[ed] too far from the intent requirement announced under *Giles*." *Id.* (noting the *Giles* inquiry is a subjective, not objective inquiry into the intent of the party who wrongfully caused the

unavailability). Upon remand, the military judge adopted his previous findings of fact, and once again excluded the statements. The military judge was still not convinced that the Government had met its burden to demonstrate Appellant forfeited his right to confrontation by wrongdoing. A key consideration for the military judge was that the accused was not under any active investigation, nor was there any indication that he would be investigated in the future. Mrs. Becker had recanted her previous allegations against Appellant and had not displayed any signs of wanting to initiate another investigation. The military judge stated that he found it "wholly speculative that an investigation, including one in which Mrs. Becker might make testimonial statements, would culminate in the bringing of charges." In the military judge's analysis, this was a key factor considering the lack of direct evidence of the Appellant's intent regarding Mrs. Becker on October 8, 2015.

Additionally, the military judge concluded there was "no evidence that, leading up to 8 October 2015, the accused was engaged in behaviors intended to isolate the victim from outside help." The military judge noted there was little circumstantial evidence from which the court might reasonably infer Appellant's intent, as Appellant and Mrs. Becker remained business partners. Mrs. Becker also continued to stay engaged in friendships, regularly stayed the night in another residence with another person, and on the day of her death, had lunch with several close acquaintances. Consequently, the military judge found that the preponderance of the evidence failed to establish that Mrs. Becker intended to testify at a formal proceeding, report allegations of abuse to outside authorities, cooperate with law enforcement, or resort to outside help in the future.

## II. Lower Court's Review

The Government again appealed pursuant to Article 62, UCMJ. The lower court found certain facts supported the finding that Appellant intentionally killed Mrs. Becker and that "at least part of his intent was to prevent [her] from causing him any more problems akin to the 'living nightmare' she had caused him when she reported her prior allegations of abuse to the authorities." *Becker*, 81 M.J. at 534. According

to the lower court, the facts relevant to its *Giles* inquiry
included:

- Two days before her death, [Appellant] was concerned
  about [Mrs. Becker's] "making problems" for him upon
  moving out. While informing the police of his concern,
  [Appellant] also reported the problematic effects of Mrs.
  Becker's alcohol consumption, yet bought a bottle of
  wine for their apartment that same day.

- A day or so before Mrs. Becker's death, [Appellant]
  retrieved pills from his old office matching the physical
  description of prescription pills containing the same
  sedative later found in Mrs. Becker's system.

- Just prior to Mrs. Becker's death, text messages
  evidencing her ostensible desire to get back together
  with [Appellant], but being distraught about being
  rejected by him, were sent from Mrs. Becker's phone to
  her new boyfriend, at times when [Appellant] was not
  using his own phone.

- [Appellant] told the police he heard only an initial
  scream from Mrs. Becker's bedroom before arriving just
  in time to see her go out the window, whereas multiple
  bystanders heard Mrs. Becker repeatedly and fearfully
  crying for help, saw her struggling to hold onto a window
  ledge for a period of time before falling, and then saw
  him looking down from the window to where she fell,
  which he denied.

- Two days after Mrs. Becker's death, [Appellant] was still
  thinking and talking about the "living nightmare" she
  had caused when she reported he had assaulted and
  strangled her in the Army hotel in August 2013.

- In addition to being investigated previously for
  assaultive conduct toward Mrs. Becker—which he
  considered harmful to his career—at the time of her
  death [Appellant] had an ongoing child custody dispute
  over children from a previous marriage, which he feared
  would be negatively impacted by even the report that
  Mrs. Becker had committed suicide or accidentally
  fallen.

- Among the things Mrs. Becker revealed to friends and
  family members about her abusive marriage, was her
  fear of what [Appellant] would do if he lost his career.

*Id.* at 533–34.

The lower court held that Mrs. Becker's prior statements were admissible under the forfeiture by wrongdoing exception, and concluded that the military judge abused his discretion by failing to consider the above facts in discerning Appellant's intent. *Id.* at 535.

## III. Discussion

### A. Standard of Review

"In an Article 62, UCMJ, appeal, this Court reviews the military judge's decision directly and reviews the evidence in the light most favorable to the party which prevailed at trial," which in this case is Appellant. *United States v. Pugh*, 77 M.J. 1, 3 (C.A.A.F. 2017) (internal quotation marks omitted) (citation omitted). A military judge's decision to exclude evidence is reviewed for an abuse of discretion. *United States v. Bowen*, 76 M.J. 83, 87 (C.A.A.F. 2017). "An abuse of discretion occurs when a military judge either erroneously applies the law or clearly errs in making his or her findings of fact." *United States v. Donaldson*, 58 M.J. 477, 482 (C.A.A.F. 2003). These standards also apply to interlocutory appeals under Article 62, UCMJ. *United States v. Mitchell*, 76 M.J. 413, 417 (C.A.A.F. 2017).

### B. Forfeiture by Wrongdoing

The Sixth Amendment's Confrontation Clause holds that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. This "bedrock procedural guarantee" applies to both federal and state prosecutions and is a concept that dates back to Roman times. *Crawford v. Washington*, 541 U.S. 36, 42–43 (2004). In *Crawford*, the Supreme Court held that "[w]here testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id.* at 68. In *Giles*, the Supreme Court subsequently addressed two exceptions to the cross-examination requirement. 554 U.S. at 358. One of those exceptions, derived from common law, is the doctrine of forfeiture by wrongdoing, which provides that where an accused's wrongful actions prevent a witness from testifying, and where those actions were designed to prevent the witness from testifying, admission of out-of-court statements by that witness does not

offend the Confrontation Clause of the United States Constitution. *Id*. at 359. This Court has not addressed the doctrine of forfeiture by wrongdoing.

The Supreme Court in *Reynolds v. United States*, provided the following explanation of this exception: "[t]he Constitution does not guarantee an accused person [protection] against the legitimate consequences of his own wrongful acts. It grants him the privilege of being confronted with the witnesses against him; but if he voluntarily keeps the witnesses away, he cannot insist on his privilege." 98 U.S. 145, 158 (1878). The Court in *Giles* specifically addressed this language from *Reynolds* but noted that even though "*Reynolds* invoked broad forfeiture principles to explain its holding," it only did so to admit testimony where the defendant intended to keep the witness away. 554 U.S. at 366. The Court in *Giles* further observed that *Reynolds* "indicated that it was adopting the common-law rule," which, as the Court explained in *Giles*, requires the defendant to intend to keep the witness from testifying. *Id*.

In military practice, the prohibition against the admission of hearsay is contained in M.R.E 802. The forfeiture by wrongdoing exception to M.R.E. 802 can be found in M.R.E. 804(b)(6) which allows "[a] statement offered against a party that wrongfully caused or acquiesced in wrongfully causing the declarant's unavailability as a witness, and did so intending that result."

In *Giles*, the Supreme Court held that a California rule of evidence creating a general exception to hearsay for *any* wrongdoing violated the Confrontation Clause. 554 U.S. at 366. The Court, however, asserted that an exception limited to wrongdoing for the purpose of preventing a declarant from testifying would be constitutional. *Id*. at 361–62. M.R.E. 804(b)(6) requires an intent to cause a declarant's unavailability and therefore does not suffer the same flaw as the California rule at issue in *Giles*.

For a statement to qualify under the forfeiture by wrongdoing exception, (1) the party against whom the statement is offered must have wrongfully caused the declarant's unavailability as a witness, and (2) the party caused the witness's unavailability with the intent to make

that witness unavailable, i.e., that the accused intended their conduct to prevent the witness from testifying against them in court. *Id.* at 364–68. With respect to the second prong, the party's intent, in causing the declarant's unavailability, need not be motivated solely by the desire to prevent the declarant's would-be testimony, rather, only that it was a motivating factor in the party's decision to take such an action. *United States v. Jackson*, 706 F.3d 264, 269 (4th Cir. 2013).[2]

### C. Review of the Military Judge's Second Findings

On matters of fact with respect to appeals under Article 62, UCMJ, this Court is "bound by the military judge's factual determinations unless they are unsupported by the record or clearly erroneous." *Pugh*, 77 M.J. at 3 (citing *United States v. Gore*, 60 M.J. 178, 185 (C.A.A.F. 2004)). A reviewing court may not "find its own facts or substitute its own interpretation of the facts." *United States v. Cossio*, 64 M.J. 254, 256 (C.A.A.F. 2007). It is an abuse of discretion if the military judge: (1) "predicates his ruling on findings of fact that are not supported by the evidence"; (2) "uses incorrect legal principles"; (3) "applies correct legal principles to the facts in a way that is clearly unreasonable"; or (4) "fails to consider important facts." *United States v. Commisso*, 76 M.J.

---

[2] In the context of domestic abuse, the Supreme Court has recognized that:

> Acts of domestic violence often are intended to dissuade a victim from resorting to outside help, and include conduct designed to prevent testimony to police officers or cooperation in criminal prosecutions. Where such an abusive relationship culminates in murder, the evidence may support a finding that the crime expressed the intent to isolate the victim and to stop her from reporting abuse to the authorities or cooperating with a criminal prosecution—rendering her prior statements admissible under the forfeiture doctrine. Earlier abuse, or threats of abuse, intended to dissuade the victim from resorting to outside help would be highly relevant to this inquiry, as would evidence of ongoing criminal proceedings at which the victim would have been expected to testify.

*Giles*, 554 U.S. at 377.

315, 321 (C.A.A.F. 2017) (citing *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010)). We conclude the military judge's findings of fact on the second element of the exception to the hearsay rule in M.R.E. 804(b)(6) were not clearly erroneous.

The military judge did not abuse his discretion in finding that the circumstantial evidence did not warrant an inference that Appellant acted with such an intention. His findings of fact and conclusions of law were thorough, based upon an application of the correct legal principles to Mrs. Becker's prior statements, and were supported by the evidence provided in the record. The military judge was not convinced that the "unavailable witness," Mrs. Becker, would have been called to render testimony against Appellant in any future proceedings due to her recantation and refusal to cooperate with law enforcement. These findings of fact are supported by the record.

When determining the applicability of the forfeiture by wrongdoing exception, the military judge applied the appropriate standard articulated in *Giles*. As he stated in his findings:

> To establish waiver/forfeiture by wrongdoing, the government must demonstrate both that the accused's actions caused the witness' unavailability and the accused's conduct was "designed" to prevent the witness' testimony. *United States v. Giles*, 554 U.S. 353, 364 (2008). Therefore, the accused must have "intended" to prevent the witnesses' testimony before waiver applies and statements are admitted without confrontation.

In light of the available circumstantial evidence, the military judge concluded that the second prong in *Giles* had not been satisfied, i.e., that Appellant's actions against Mrs. Becker were done with the intention of preventing her testimony. He simply was not persuaded that the record supported a ruling stripping Appellant of his right to confrontation regarding Mrs. Becker's statements.[3]

---

[3] Nor are we persuaded, contrary to the lower court's implied insinuation to the contrary, that the military judge ignored important facts. The situation in this case is nothing akin to the situations we have encountered in the past where we concluded the military judge had indeed done so. *See Commisso,* 76 M.J. at 323

Finally, as noted earlier, we directly review the military judge's findings for an abuse of discretion. That said, we disagree with the lower court's decision to disregard the military judge's analysis and conduct a *Giles* analysis on a particular set of facts determined to be important to the lower court. On an Article 62, UCMJ, appeal, the lower court is not authorized to make factual determinations to support a simple difference of opinion between it and the military judge.

## IV. Conclusion

We hold there was no abuse of discretion in the ruling to suppress the statements provided by Mrs. Becker based on the facts and the applicable legal standards. The decision of the United States Navy-Marine Corps Court of Criminal Appeals is reversed. The case is returned to the Judge Advocate General of the Navy for remand to the military judge for further proceedings consistent with this opinion.

---

(the military judge neglected to consider facts that should have been weighed heavily in resolving the critical issue); *United States v. Solomon*, 72 M.J. 176, 181 (C.A.A.F. 2013) (the military judge failed to reconcile or even mention uncontroverted police report showing accused was in custody at the time the victims were being assaulted).